LEWIS P. RICHARDSON *et al. vs.* JOHN L. FARWELL.

Argued Feb. 2, 1892. Decided April 1, 1892.

**Notice of Sale by Guardian of His Ward's Land.**—Where a sale by a nonresident guardian of his ward's land in this state was duly licensed and ordered, and his name was authoritatively and correctly attached to the notice of sale, an error in the published signature of his attorney, also attached thereto, *held* an informality, merely, and not sufficient to make the sale void.

**Publication of the Notice.**—Evidence *held* sufficient to sustain a finding of fact by the trial court that the notice was duly published for the requisite time.

**Notice—Omission to Name County and State.**—A notice of sale, which correctly described by government subdivisions land belonging to the ward, and published in the county where the land so described is situated, is not void for uncertainty, though such description fail to name the county and state.

**Immaterial Errors.**—Other errors noticed in the opinion *held* not to render the sale open to collateral attack, or sufficient to make it void under the statutory rule. 1878 G. S. ch. 57, § 51.

Appeal by plaintiffs, Lewis P. Richardson and Anna M. Richardson, from a judgment of the District Court of Hennepin County, *Hicks*, J., entered August 28, 1891, that plaintiffs take nothing by their action.

This action was brought under 1878 G. S. ch. 75, § 2, to determine the adverse claim of the defendant, John L. Farwell, to an undivided one fourth of the north half of the north-east quarter of section

twenty, (20,) in township twenty-nine (29) north, of range twenty-four (24) west, in Hennepin County. The land is now within the City of Minneapolis, and lies about two miles west of the Falls of St. Anthony.    Defendant by his answer asserted title to the whole eighty acres.    The issues were tried June 9, 1891, before the court without a jury.

Ada E. P. Richardson, of Westchester County, N. Y., died intestate February 17, 1870, seized in fee of the undivided fourth of this eighty acres, and of lot one (1) in block nine (9) in the city of Faribault in Rice County, Minn., and of other real property in this State.    She left her surviving the plaintiffs, her children and sole heirs at law.    Anna M. was then seven years old, and Lewis P. two years old.    They both resided with her at Eastchester, N. Y. This property was devised to her by the will of her father, Lewis Perry, who died in 1865.

George W. Richardson was on June 19, 1871, appointed by the Surrogate Court of Westchester County, N. Y., guardian of the persons and estate of these children.    He on September 14, 1871, gave Geo. M. Gilmore of Faribault, Minn., a power of attorney to act for him and procure the sale of the real estate of these wards.    On October 16, 1871, Gilmore presented to the Probate Court in Rice County, Minn., a petition for license to sell the real estate of the wards situate in this state.    That court made an order thereon that day appointing December 5, 1871, at 10 o'clock A. M., at the Probate Office in Faribault, as the time and place for the next of kin of the wards, and all persons interested in their estate, to show cause why license should not be granted, and further ordered that a copy of the order be served fourteen days before the hearing by publication thereof for four successive weeks in the Faribault Republican, and the order was so published, commencing on October 18, 1871.    Gilmore appeared in that court on the day appointed, and made proof that a sale of the real estate was necessary for the support of the wards, and for investment for their benefit, and, no one objecting, license was granted to sell the real estate above described, and the guardian was ordered to give notice of the time and place of sale by posting notice in three public places and publishing it in the Republican in Fari-

bault, and in the Tribune in Minneapolis, for three weeks next before the sale. On November 18, 1872, the guardian presented to the Probate Court of Rice County another petition stating that he had not sold the land, and requesting that his license to sell be extended for another year. Thereupon that court on December 2, 1872, made another order granting this request.

Notice of sale of the land in Hennepin County was given by posting notices, and by publication in the Minneapolis Tribune for four weeks commencing March 6, 1873. The sale was made by public auction April 4, 1873, to the defendant, John L. Farwell, of Claremont, N. H., for $1,400. The notice of sale so posted and published was as follows:

### GUARDIAN SALE.

In the matter of the guardianship of Lewis P. and Anna M. Richardson, minors.

Notice is hereby given that by virtue and in pursuance of an order of license made in said matter on the 4th day of December A. D. 1872, by the Judge of Probate of the county of Rice, the undersigned guardian to said Lewis P. and Anna M. Richardson, minors, will on the 4th day of April A. D. 1873, at one o'clock in the afternoon, at the office of the Register of Deeds of Hennepin County, in the city of Minneapolis, offer for sale at public vendue, the following described lands, to-wit: The undivided one-fourth ($\frac{1}{4}$) of the north half ($\frac{1}{2}$) of the north-east quarter (N. E. $\frac{1}{4}$) of section twenty (20,) township twenty-nine (29,) range twenty-four (24.)

The terms of sale will be made known at the time and place of sale.

Dated at Faribault this 3rd day of March, A. D. 1873.

GEO. W. RICHARDSON,

Guardian.

By GEO. GILMAN, attorney in fact for Guardian.

mar 6 w 4 t.

The affidavit of the printer of the Tribune to the publication of the notice of sale was defective, but on the trial of this action parol evidence was received of its due publication. The sale was

reported to the Probate Court and was confirmed April 7, 1873, and a guardian's deed prepared and sent to the guardian at East-chester, N. Y., where he executed it and delivered it to the purchaser and received the $1,400. The guardian died testate February 5, 1881, and H. B. Kirk was appointed executor of his will. The wards never paid taxes on or claimed the land until one George W. Murphy, in May, 1890, found Lewis in Cook County, Ill., and Anna M. in Shawnee County, Kansas, and made with them a con-tract to institute inquiry and examination into any rights they might have to land in Minnesota, and report thereon to them from time to time, and to institute and prosecute actions to recover the same without charge for his services, and to have one half of all property obtained. Defendant proved on the trial that the land was worth no more than $1,200, when he bought it at the guard-ian's sale, and that he acted fairly and in good faith in making his purchase. The defendant gave in evidence a certified copy of the final account of the guardian as presented in the N. Y. Surro-gate Court by Kirk, executor, and the settlement by him with the wards after they became of age. This account showed the receipt of the $1,400 obtained for this Minneapolis property and that it was accounted for with the wards. Findings were made June 16, 1891, and judgment ordered dismissing the action on the merits; such judgment having been entered the plaintiffs appealed.

*Haynes & Chase*, for appellants.

The power exercised by a guardian in making a sale is conferred by statute, and he must strictly comply with its provisions. *Mon-tour* v. *Purdy*, 11 Minn. 384, (Gil. 278;) *Stewart* v. *Bailey*, 28 Mich. 251; *Ryder* v. *Flanders*, 30 Mich. 336; *Blackman* v. *Baumann*, 22 Wis. 611; *Wilkinson* v. *Filby*, 24 Wis. 441; *Babcock* v. *Cobb*, 11 Minn. 347, (Gil. 247.)

The evidence shows that one George Gilman and not George M. Gilmore signed the notice of sale as attorney in fact for the guardian. It is wholly immaterial whether we treat the signature as that of a mere interloper, as matter of fact, or as having been affixed by rea-son of the carelessness of the true attorney. All that this notice

states in regard to the terms of the sale is that those terms would be made known at the time of the sale. The notice did not describe the land with common certainty. It did not state county, state, or meridian. Does such a notice describe the property with common certainty, within the meaning of the statute? We submit that it does not. We are forced to the conclusion that the guardian described the land with singular uncertainty. He should not omit so important a portion as the county, state, and meridian. *Reynolds* v. *Wilson*, 15 Ill. 396; *Cochran* v. *Utt*, 42 Ind. 267; *Weed* v. *Edmonds*, 4 Ind. 470; *Murphy* v. *Hendricks*, 57 Ind. 593.

In *Dutch* v. *Boyd*, 81 Ind. 146, it appeared on the face of the mortgage that it was made in the form prescribed by the law of that state, that it was executed in the state, between parties residing therein, and the court presumed that the land was within the state. But no such presumption can be entertained in construing a guardian's notice of sale, and that the court would take judicial notice of the existence and location of the general base lines from which government surveys are made. But the simple question here is, does this notice in and of itself contain a description which is of common certainty? *Beal* v. *Blair*, 33 Iowa, 324. In Missouri a contrary rule obtains, the courts there holding that in a collateral proceeding, the tendency is not to view them with a very critical eye, but to maintain their validity when the directions of the statute have been substantially complied with. *Tutt* v. *Boyer*, 51 Mo. 430; *Overton* v. *Johnson*, 17 Mo. 449.

The first evidence of publication offered consisted of the printer's affidavit. This affidavit was obviously fatally defective. The other evidence offered to show that notice was given, was the oral testimony of George M. Gilmore, who superintended the sale, and W. H. Williams, a printer, who testified as an expert, and their testimony was too meager and unsatisfactory to be entitled to any weight.

The court also erred in receiving in evidence the proceedings in Surrogate's Court in the State of New York. This evidence was offered for the purpose of showing that plaintiffs had, in their final settlement with their guardian, received the $1,100 and ratified the sale, but it was improperly admitted.

*Warner, Richardson & Lawrence*, for respondent.

The real cause of this action was not any wrong done to the plaintiffs by anybody, but was the Murphy bargain and the phenomenal growth of Minneapolis. Under these circumstances the real question is, not whether some excuse can be found to justify holding the sale to be void, but whether it can be sustained without doing violence to established principles of law. These circumstances reduce all appellants' objections to mere technicalities, having no merit or substantial foundation. The proceeding is shown to have accomplished all that the law was designed to secure. The line of reasoning and remarks of this court in the following cases apply: *Menard* v. *Crowe*, 20 Minn. 448, (Gil. 402;) *Golcher* v. *Brisbin*, 20 Minn. 453, (Gil. 407;) *Thorwarth* v. *Armstrong*, 20 Minn. 464, (Gil. 419;) *Bowers* v. *Hechtman*, 45 Minn. 238; *Willard* v. *Finnegan*, 42 Minn. 476; *Ryder* v. *Hulett*, 44 Minn. 353.

In printing the notice of sale the typesetter somehow left out the unimportant middle letter of Gilmore's name and mistook his last name, printing it Gilman. Nobody at the time noticed the printer's mistake. It was at the most a mere slip, a mere irregularity, within the meaning of 1866 G. S. ch. 57, § 47, and as such to be ignored after confirmation of the sale. Such an objection was not saved by the statute. 1866 G. S. ch. 57, §§ 39, 40; *Dayton* v. *Mintzer*, 22 Minn. 393; *Dexter* v. *Cranston*, 41 Mich. 448; *Persinger* v. *Jubb*, 52 Mich. 304.

It was enough that the notice purported to be the act of the guardian; that the sale was to be his sale; that if confirmed, the purchaser was to have his deed. *Menard* v. *Crowe*, 20 Minn. 448, (Gil. 402;) *Baldwin* v. *Allison*, 4 Minn. 25, (Gil. 11;) *Berkey* v. *Judd*, 22 Minn. 287; *Merrill* v. *Nelson*, 18 Minn. 366, (Gil. 335;) *Lane* v. *Innes*, 43 Minn. 137; *State* v. *Sannerud*, 38 Minn. 229; *Stewart* v. *Colter*, 31 Minn. 385; *Hotchkiss* v. *Cutting*, 14 Minn. 537, (Gil. 408;) *Millette* v. *Mehmke*, 26 Minn. 306.

As it was wholly unnecessary to state in the notice the date of either order of the probate court, any mistake in that respect would at most be a mere irregularity, and cured by the order of confirmation. It is not one of the grounds of attack saved by the statute.

*Bartleson* v. *Thompson*, 30 Minn. 161; *Crombie* v. *Little*, 47 Minn. 581; Gary, Prob. Pr. § 534.

Appellants contend that this sale ought to be treated as a mere nullity, at their election, on the ground that the notice of sale did not describe the property with common certainty. Under the Code, a sale of land under an executive judgment or decree is valid without any notice at all of the sale. 1878 G. S. ch. 66, §§ 317, 318. Such was the law without any statute. To hold that the ward can collaterally question a guardian's sale for a defective description of the land in the notice, will be deciding that our probate judges are less faithful to their trust than our sheriffs or their deputies.

We can find no case holding that this objection has been regarded as open after confirmation. *Dayton* v. *Mintzer*, 22 Minn. 393. 1866 G. S. ch. 57, § 35, said, " In which notice the lands and tenements to be sold shall be described with common certainty. " This provision appears to have been taken from Wis. R. S. of 1849, p. 347, § 19, p. 343, § 15; and that again from Mich. R. S. of 1846, p. 309, § 16; p. 316, § 15. The Wis. R. S. of 1878, p. 957, § 3591, changed " common " to "reasonable." If the notice under consideration be interpreted to refer to land in this state, then the description given can apply to no land in this state other than that in dispute, and it was not necessary to state in the notice that the range was west or that the township was north, or that the land was in Hennepin county. The court takes judicial notice of the fact that the description given could apply to only one piece of land in this state, and that the land in dispute. *Quinn* v. *Champagne*, 38 Minn. 322. If I say "Go up to the capitol," the command will have one perfectly obvious meaning, if spoken at St. Paul, another if spoken at Madison, and still another if spoken at Albany or Washington. Would any person of common understanding in good faith misunderstand me in either instance ? Good faith and an honest desire to understand the speaker or writer's real meaning, are at the foundation of all interpretation, no matter where the words may be found. The reasoning in *Thorwarth* v. *Armstrong*, 20 Minn. 464, (Gil. 419,) applies. A notice framed upon the view that ordinary customs, practices, and rules of business are generally known, is clothed with common

certainty within the meaning of that expression in 1866 G. S. ch. 57, § 35. *Billings* v. *Kankakee Coal Co.*, 67 Ill. 489; *Duncan* v. *Matney*, 29 Mo. 368; *Keepfer* v. *Force*, 86 Ind. 81; *Hanna* v. *Renfro*, 32 Miss. 125; *Smitha* v. *Flournoy*, 47 Ala. 345; *Wright* v. *Ware*, 50 Ala. 549.

The publication of this notice in the newspaper was shown by competent evidence. Ample foundation was laid for secondary evidence. None of the original newspaper files for 1873 could be found after diligent search. Considering the great lapse of time, the characters on the printed notice, the testimony of Williams and Gilmore, made out a *prima facie* case. 1 Greenl. Ev. §§ 20, 38, 40; *U. S.* v. *Noelke*, 17 Blatchf. 554; 2 Whart. Ev. §§ 1320, 1323, 1327, 1329.

The report of the sale was verified by Mr. Gilmore. It stated that the notice of sale was duly published, and was *prima facie* evidence of the fact, 1878 G. S. ch. 57, § 46. The guardian's deed recited the publication of this notice, and such recital was *prima facie* evidence of such publication. Gary, Prob. Pr. §§ 36, 534; *Bidwell* v. *Coleman*, 11 Minn. 78, (Gil. 45.)

The late probate proceedings taken by plaintiffs in New York were proper to show that they have long understood what their father had done, and elected after age to stand by it until persuaded to the contrary in 1890. If the proof did not establish an estoppel or an election, it was simply immaterial and harmless. *Tomlinson* v. *Simpson*, 33 Minn. 443; *Teipel* v. *Vanderweier*, 36 Minn. 443.

VANDERBURGH, J. The plaintiffs claim to own the land in controversy as heirs at law of their mother. In the year 1871, the plaintiffs then being minors, residing in the state of New York, one George W. Richardson, of the county of Westchester, in that state, was duly appointed guardian of the person and estate of each of the plaintiffs by the surrogate of that county. They were then seised of lands in the county of Rice in this state, as well as of the land in question here. In September, 1871, an authenicated copy of the letters of guardianship was filed in the probate court of Rice county, and a power of attorney was duly executed by him, running to George W. Gilmore, of that county, in due form, authorizing and em-

powering him to sell the lands of the plaintiffs in the state of Minnesota, and to act for him in the premises, which power of attorney was duly recorded. Thereafter such proceedings were duly had in the probate court of Rice county that the guardian was duly licensed to sell the lands of plaintiffs lying in each county; and thereafter, in pursuance thereof, Gilmore, the attorney in fact, caused a notice of sale to be posted and published in the county of Hennepin, the land in Rice county having been previously sold. In pursuance of such notice, the land in question here was bid off and sold to the defendant for the sum of $1,400. The sale was afterwards confirmed by the court, and the guardian's deed executed to the defendant in due form, as directed by the court. It is claimed by the plaintiffs that no title passed by this deed, because of irregularities and defects in the notice of sale.

1. The notice recites that the sale would be made, in pursuance of an order of license made on the 4th day of December, 1872, by the probate judge of Rice county, whereas the order had been previously made, and the order of the date referred to was the order extending the time for the sale of the real estate for which license had already been given. The error is immaterial, and was not misleading, because a reference to the last-named order would have led to the previous order. And the notice would have been good without reference to the date of the license.

2. The notice states that the terms of sale would be made known at the time and place of sale. Whether this was strictly proper or not, the objection does not go to the regularity or validity of the notice, as such, of the time and place of sale, and did not make the notice void, or leave the court without jurisdiction to confirm the sale.

3. The notice recites that "the undersigned, guardian of Lewis P. and Anna M. Richardson, minors, will on the 4th day of April, 1873, at one o'clock in the afternoon, at the office of the register of deeds of Hennepin county, in the city of Minneapolis, offer for sale at public vendue the following described lands, to-wit: The undivided one-fourth ($\frac{1}{4}$) of the north half ($\frac{1}{2}$) of the north-east quarter (N. E. $\frac{1}{4}$) of section twenty, (20,) township twenty-nine, (29,) range

twenty-four, (24.)   *   *   *   [Signed] GEO. W. RICHARDSON, Guardian.   By GEO. GILMAN, Attorney in Fact for Guardian." The further objection is made that the attorney's name is not correctly given, his name being "Gilmore," and not "Gilman."

The notice being authoritatively signed by the guardian, who was in fact duly authorized to make the sale, the error did not vitiate the notice. It would have been good without the attorney's name. Neither that omission nor the failure to record the power of attorney to Gilmore before the sale belongs to that class of errors or defects which go to the jurisdiction, or render the notice void. 1878 G. S. ch. 57, § 51. The sale is not open to collateral attack by reason of any of the errors named.

4. It is also objected that the real estate sold is not described with common certainty, reference being made to the omission of the county and state in the notice. But it is admitted that land of that description, by government subdivisions, is within the county of Hennepin, where the land was sold, and where by statute it was required to be sold; and, being land of the minors referred to, the description was not presumptively misleading.

There could be no other corresponding description within the county or state, and this the court will take notice of. The description was sufficient. *Quinn* v. *Champagne*, 38 Minn. 322, (37 N. W. Rep. 451;) *Sperry* v. *Goodwin*, 44 Minn. 210, (46 N. W. Rep. 328.)

5. It is also objected that there is no sufficient proof of the publication of the notice in question in a newspaper printed in that county. Upon this question the finding of the court was in the defendant's favor. Owing to the destruction of newspaper files, and an apparent error in the affidavit of publication, the evidence received upon this point in the trial court was partly oral. It was necessarily to be determined as a question of fact upon the evidence, and we are agreed that the evidence is sufficient to sustain such finding.

There are no other points deemed worthy of special notice. The writer will, however, add that, in his opinion, if there had been fatal irregularities in the proceedings, since the property was purchased in good faith, and for a full consideration, no relief should

be granted to the plaintiffs except upon the condition of reimbursement by them of the consideration money paid, with interest and taxes. *Bright* v. *Boyd,* 2 Story, 605; *Blodgett* v. *Hitt,* 29 Wis. 188, 191, and cases.

Judgment affirmed.

(Opinion published 51 N. W. Rep. 915.)