## TUCKER v. LEONARD et al.

No. 9050. Opinion Filed Sept. 16, 1919.

(Syllabus by the Court.)

1. **Guardian and Ward—Appointment—Judgment—Collateral Attack.**

Orders and decrees made by the county court need not recite the existence of facts upon which the jurisdiction of the court may depend, and when the court appointed a stranger to the exclusion of the mother, a single woman, as guardian of a minor under the age of 14 years, the irregularity, if any, of such appointment cannot be shown upon collateral attack.

2. **Indians — Guardian — Appointment—Collateral Attack.**

Assuming that sec. 4, Original Creek Agreement, providing that "all guardians or curators appointed for minors and incompetents shall be citizens," was not superseded by the provisions of Act of Congress May 27, 1908, 35 Stat. L. 312, still when the county court appointed L. as guardian of G., a Creek minor, and the records of the county court being silent as to the citizenship of L., it will be presumed the court in the proper discharge of its duty, upon inquiry, adjudged that L. possessed the requisite qualifications, and such judgment is not subject to collateral attack.

3. **Guardian and Ward—Jurisdiction of County Court—Judgments.**

County courts have full control and jurisdiction of all minors' estates, and until the minor becomes of age, all judgments and orders sleep in the bosom of the court, and may be modified, vacated or set aside during such time upon proper notice and for good cause shown.

4. **Deeds — Quitclaim Deed — Effect — Innocent Purchaser.**

A quitclaim deed, made in compliance with sec. 1161, Rev. Laws 1910, is as effectual in conveying the title of the grantor as is a warranty deed, and one can be a bona fide purchaser under the former as under the latter, the distinction being that in a quitclaim deed, the words "and warrant the title to the same" are omitted.

5. **Guardian and Ward—Sale—Return of Inventory.**

Section 6532, Rev. Laws 1910, provides that before the order appointing any person guardian takes effect, and before letters issue,

the judge must require of such person a bond to the minor, one of the conditions forming and constituting a part of such bond being to make an inventory of all the estate of the ward, and return the same within such time as the judge may order. Held, failure on the part of the guardian to return an inventory does not render void a sale of the ward's lands, under proper orders of the county court.

### 6. Same—Notice of Sale—Errors in.

The following notice of sale of minor's land was published: "Notice is hereby given in pursuance of an order of the county court of the county of Wagoner, state of Oklahoma, made on the 9th day of October, 1911, that the undersigned guardian of the estate of George Tucker, a minor, will sell at public sale to the highest bidder, subject to confirmation by the court on Monday, the 6th day of November, A. D. 1911, at 10 o'clock a. m., at the courthouse in Sapulpa, Creek county, Okla., all the right, title and interest of said George Tucker, a minor, in and to the following described real estate, situated in Wagoner county, state of Oklahoma, to-wit: The SW¼ of the SW¼ of sec. 3, Twp. 17 N., R. 7 East, and the SW¼ of the SE¼ of sec. 17, Twp. 17 N., R. 7 East, and the W½ of the SW¼ of sec. 33, Twp. 18 N., R. 8 East in Creek county, Okla. Said real estate will be sold on the following terms and conditions, to-wit: All cash upon confirmation of sale by the county court of Wagoner county, Okla." Held, that such notice was substantial compliance with the statute, and that no one could have been misled as to the location of the land to be sold.

### 7. Same—Confirmation of Sale—Effect of.

After a county court obtains jurisdiction of a guardianship sale proceeding, all non-jurisdictional irregularities and defects between the acquirement of jurisdiction and the order of confirmation are cured by the order of confirmation to the extent that the order of confirmation may not be collaterally attacked on account of such irregularities.

### 8. Pleading—Petition—Demurrer.

Where a general demurrer is filed to a petition as a whole, if any paragraph of the pleading is good and states a cause of action, the demurrer should be overruled.

### 9. Ejectment—Fraud—Innocent Purchaser—Burden of Proof.

Purchasers of land which has been fraudulently transferred to their grantor must establish the good faith of their purchase, and it cannot be presumed.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Ejectment by George Tucker against M. B. Leonard and others. From judgment for defendants, the plaintiff brought error. Reversed on rehearing.

Norman Barker, Hainer, Burns & Toney, Asberry Burkhead, and McGuire & Devereux, for plaintiff in error.

J. E. Thrift, C. J. Davenport, Geo. S. Ramsey, Edgar A. de Meules, Malcolm E. Rosser, Villard Martin, Jno. G. Ellinghausen, Edwin A. Ellinghausen, and McDougal. Lytle, Allen & Hodges, for defendants in error.

PITCHFORD, J. This is an action in ejectment and to quiet title, instituted by the plaintiff against the defendants, who claimed title to the land in question by mesne conveyances at a guardian's sale made pursuant to the orders, and under the supervision of the county court of Wagoner county, Oklahoma; the land involved being the allotments of Fred and George Tucker, New Born Creek Freedmen. Two actions were brought and consolidated in the Supreme Court, the other action, No. 9051, being by Fred Tucker. In both cases the petition of the plaintiffs in the court below attacked the validity of the guardian's sale on account of alleged errors and irregularities in the proceedings in the county court of Wagoner county, Oklahoma, in appointing a guardian and in ordering and confirming the sale. The trial court sustained the several demurrers of defendants to these petitions. Plaintiffs refused to plead further, judgment was entered for the defendants and the plaintiffs bring action here.

The propositions presented for our consideration may be summarized as follows:

First: That the court was without jurisdiction to appoint the defendant Leslie as guardian, the minors being under the age of 14 years and in the custody of their mother, who claimed to be suitable and competent to have the care and guardianship of the minors; and that the appointment of a stranger as guardian of a minor without notice to the parents or persons having the custody of said minors is void.

Second: That the county court was without authority to appoint a guardian of Creek minors, who are citizens of the Creek Nation or Tribe of Indians, when said guardian is not a citizen or member of said Tribe.

Third: That where a petition is filed with the county court by the guardian for the sale of his ward's land, and where upon hearing a judgment is rendered denying the petition and finding that it is not necessary for the support of the ward, and that it is not for the best interest of said

ward that said real estate be sold, and where there is no appeal from said order and judgment of the court and findings of fact, and where no motion or petition is filed to vacate, modify or set aside the same, said order and judgment becomes a final judgment of said county court and is res adjudicata until a change of conditions arises, or the necessity for the sale of the ward's real estate be shown upon some separate and different grounds than those contained in said petition so adjudicated; and that the county court of Wagoner county was without jurisdiction to hear and determine the petition for the sale of real estate filed and determined October 9, 1911, for the reason that all the matters therein presented had been adjudicated by the order and judgment of said county court under date of September 11, 1911, and that this judgment of said county court was res adjudicata.

Fourth: That where a purchaser of real estate at a guardian's sale has knowledge of fraud practiced by the guardian upon the court and next of kin, he is bound by such fraudulent act of the guardian, which vitiates the entire proceedings; and where the purchaser conveys the land so acquired by him to his grantee by a quitclaim deed. said grantee and all persons holding under him are charged with knowledge of the fraudulent character of the proceedings and the defects of the record, which may be raised either upon direct or collateral attack; and, where such purchaser at guardian's sale, with knowledge of fraudulent, void and irregular proceedings, conveys said real estate to his grantee by quitclaim deed, said grantee and all subsequent grantees take with notice of all defects of record and fraud and are not innocent purchasers.

Fifth: That the proceedings before the county court leading up to the sale of plaintiff's allotment were void because the guardian had failed to file an inventory of his ward's estate.

Sixth: .That the sale was void for the reason that no notice was given of the sale as required by law; that the property to be sold was located in Creek county, whereas the notice of sale described it as being located in Wagoner county.

Seventh: That the sale of the plaintiff's land by the guardian, being a private sale, and the land not having been appraised, the court was without jurisdiction to confirm the sale.

Eighth: That the petition for the sale of said real estate was fraudulent and void

for the reasons that there was no necessity for the sale; that the guardian entered into a fraudulent and collusive agreement with Ella Tucker, the mother of the plaintiff, and wrongfully and fraudulently induced the said Ella Tucker to consent to the sale of the lands and not to appear, contest or oppose the sale; that the guardian fraudulently induced the said Ella Tucker to sign a petition giving her consent to the sale of 80 acres of her minor sons' allotments, that is, 40 acres of the allotment of each minor; and that the guardian induced the said Ella Tucker to believe he would apply the proceeds to the payment and discharge of a certain mortgage.

(1) The first proposition raised by the plaintiff is the appointment of the defendant Leslie as guardian to the exclusion of the mother, she being a single person, and the minor being under the age of 14 years. Section 6530, Rev. Laws 1910, provides as follows:

"The father of the minor, if living, and in case of his decease, the mother, while she remains unmarried, being themselves respectively competent to transact their own business, and not otherwise unsuitable, must be entitled to the guardianship of the minor."

There is no ambiguity in this statute. It is clear that the mother, being single and competent to transact her own business, is entitled to the guardianship of the person and estate of her minor children under the age of 14 years. The petition filed by the defendant Leslie in the county court of Wagoner county, gave the ages of George and Fred Tucker as under the age of 14 years; also showed they were in the custody of their mother, and that their father was dead and was their guardian prior to his death. It was not alleged in said petition that the mother was disqualified or incompetent in any way to act as guardian. There was no waiver on her part of her right to the guardianship, nor is there any showing that she filed any written request or nomination for the appointment of the defendant Leslie. The plaintiff contends that. as a consequence. the appointment of the defendant Leslie was void, and being void, the order appointing him as guardian is subject to collateral attack.

Section 6522. Rev. Laws 1910, provides:

"The county court of each county. when it appears necessary or convenient, may appoint guardians for the persons and estates. or either or both of them, of minors who have no guardian legally appointed by will. or deed, or who are inhabitants or residents of the county, or who reside without the state

and have estate within the county. Such appointment may be made on the petition of a relative or other person in behalf of such minor. Before making such appointment, the judge must cause such notice as he deems reasonable to be given to the relatives of the minor residing in the county, and to any person having care of such minor."

Section 6523, Id., provides:

"If the minor is under the age of 14 years the county judge may nominate and appoint his guardian. If he is above the age of 14 years, he may nominate his own guardian, who, if approved by the judge, must be appointed accordingly, and the county court in appointing a guardian is to be guided by considerations named in section 4942 (3331)."

Section 3331, Id., provides:

"In awarding the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations: (1) By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question. (2) As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but other things being equal, if the child be of tender years it should be given to the mother. If it be of an age to require education and preparation for labor or business, then to the father."

All the questions raised by the plaintiff were matters before the court, and we are to presume that the court had before him the statutes above quoted. As to whether or not the mother was a fit and proper person, and qualified to be appointed guardian, or as to whether or not she had notice of the application of the defendant to be appointed guardian, were matters within the jurisdiction of the court. The order appointing the defendant Leslie contains the following finding of the court:

"And it being further proven that Ella Tucker, mother of said minors, and Charlie Tucker, brother, had been duly served with notice of said hearing to be had on the 31st day of July, 1911, by serving copies of said notice upon them in Wagoner county, Okla. * * *"

The county court of Wagoner county having jurisdiction over the subject-matter and the parties, and being a court of record, its orders and judgments should be accorded like force, effect and legal presumptions, as the judgments and decrees of other courts of general jurisdiction. Berry v. Tolleson, 68 Oklahoma, 172 Pac. 630; Reeve v. Kennedy, 43 Cal. 643; Thompson v. Tolmie, 2 Pet. 157, 7 L. Ed. 381. In Welch v. Focht, 67 Oklahoma,

171 Pac. 730, Justice Rainey in delivering the opinion of the court said:

"The county courts of this state are courts of record, and have original general jurisdiction of probate matters. The orders and judgments of such courts, when acting within their jurisdiction, are entitled to the same favorable presumptions, and the same immunity from collateral attack as are accorded those of other courts of general jurisdiction."

In Wheatland Gr. & Lbr. Co. et al. v. Downing et al., 68 Oklahoma, 173 Pac. 956, Justice Hardy, delivering the opinion of the court, said:

"When in a judgment rendered by a domestic court of competent jurisdiction, there is an express finding that service of process was had upon certain garnishees in the action, such finding cannot be attacked in a collateral proceeding."

In Moffer v. Jones, 67 Oklahoma, 169 Pac. 652, the court said:

"In a collateral attack upon probate proceedings in the county court, the scope of the inquiry is confined to the question whether the county court had jurisdiction of such proceedings and its orders will not be held void for errors or irregularities occurring during the progress of the proceeding."

In Parmenter v. Ray, 58 Okla. 27, 158 Pac. 1183, the court said:

"However, for the purposes of this decision, it may be conceded that the court committed error in appointing Conner; but from this it does not necessarily follow that the court acted without or in excess of its jurisdiction. Errors of law in making an order should not be confounded with the power of the court to make the order. The latter only involves jurisdiction, the former, the exercise of jurisdition."

We have seen that section 6530, Rev. Laws 1910, supra, provides that the mother, while she remains unmarried and competent to transact her own business, and is not otherwise unsuitable, must be entitled to the guardianship of the minor. In the case of Carolina v. Montgomery, 74 Oklahoma, 177 Pac. 612, Hunter Montgomery, the defendant in error, was the plaintiff in the trial court. He filed an action in Okfuskee county to quiet his title to certain real estate, the same being the allotment of the plaintiff in error, Jeanetta Carolina, the defense there being that Gracie Williams was the mother and guardian of Jeanetta Carolina; that Gracie Williams being a married woman at the time of her appointment as guardian, the appointment was void and subject to collateral attack. In the trial of the cause, the court found for the plaintiff, and the main ground relied upon for reversing the judgment of the trial court was in holding "that the county

court of Okfuskee county had jurisdiction to appoint Gracie Williams, mother of plaintiff, as her guardian, notwithstanding said Gracie Williams was at the time a married woman." Upon appeal to this court, it was held that the appointment of a married woman as guardian of her child is voidable, but not void, and the illegality of such appointment cannot be shown upon collateral attack.

In King v. Mitchell, 69 Oklahoma, 171 Pac. 725, it was held that where the judgment of the county court was silent as to the qualifications of the guardian, it was to be presumed that the court found he was qualified. We take it that the converse of this proposition would be true in the instant case, that is, the court found that Ella Tucker, the mother, was not a fit and suitable person to be appointed. Whether or not Ella Tucker, the mother, was in court at the time the defendant Leslie was appointed guardian is not disclosed by the record. We have seen, however, that she had notice of the hearing. The order appointing Leslie guardian carries with it the presumption that the county court found every essential fact prerequisite to the validity of his appointment, and it was not necessary that the order should contain any finding that Ella Tucker was not fit and suitable to have the care and guardianship of the minors, George and Fred Tucker. It is provided by section 6489, Rev. Laws 1910:

"Orders and decrees made by the county court, or the judge thereof, need not recite the existence of facts, or the performance of acts upon which the jurisdiction of the court or judge may depend, but it shall only be necessary that they contain the matters ordered or adjudged, except as otherwise provided in this chapter. * * *"

In Ex parte Miller (Cal.) 42 Pac. 428, John McComb, a stranger, had been appointed guardian of the person of Lillie Miller. The parents of the ward instituted habeas corpus proceedings to contest the right of the guardian to the custody of the minor. It was there held:

"As the filing of the petition for the appointment of a guardian gave to the superior court jurisdiction of the subject-matter and the appearance of the parents at the hearing of the petition, as well as the service upon them of the citation, gave to the court jurisdiction over their persons, it was incumbent upon them to present to that court any matter, if such existed, which would have justified the court in denying the petition. They cannot afterwards, upon proceedings of habeas corpus, assert a right to the custody of the infant as against the guardian, which they might have presented in that proceeding, but which they neglected to present."

(2) The plaintiff next contends that Les-

lie, the guardian, was not a citizen or member of the Creek Tribe of Indians, and was therefore not qualified to be appointed as guardian for George and Fred Tucker, they being Creek minors. This contention upon the part of the plaintiff is founded upon section 4, Original Creek Agreement (31 Stat. L. 416), which provides as follows:

"Allotments for any minor may be selected by his father, mother, or guardian, in the order named, and shall not be sold during his minority. All guardians or curators appointed for minors and incompetents shall be citizens."

The petition filed in the county court by Leslie, asking to be appointed guardian, and the order appointing him as guardian, fail to state whether or not he was a citizen of the Creek Tribe of Indians; however, the order itself recites:

"And the said petitioner, appearing in person and by attorney, and no person appearing in opposition thereto, and the court having heard the evidence offered in said cause, and being fully advised in the premises, it is ordered that C. K. Leslie be and is hereby appointed guardian of the estate of the above named Fred Tucker and George Tucker, minors, and that letters of guardianship be issued to C. K. Leslie," etc.

We are not advised as to the nature or extent of the evidence heard by the court, but we are to presume sufficient was introduced to satisfy the court as to the competency and the qualifications of the petitioner. In the case of King v. Mitchell, 69 Oklahoma, 171 Pac. 725, this identical question was involved. Bleakmore, C., writing the opinion, said:

"The competency of plaintiff's guardian and the necessity for the sale of her interest in the lands in suit were questions properly and necessarily presented for the consideration of the county court when the guardian was appointed and the sale ordered and confirmed. If the provisions of the Original Creek Agreement, that 'all guardians or curators appointed for minors and incompetents shall be citizens,' was in force and controlling at the time of the appointment of the guardian in the instant case (concerning which we express no opinion) yet, as the record of the county court is silent relative to the citizenship of such guardian, it will be conclusively presumed that, in making the appointment, the court, in the proper discharge of its duty, upon inquiry, adjudged that the person designated as guardian of plaintiff possessed the requisite qualifications; and such judgment being that of a court of general jurisdiction, is not subject to collateral attack, and may not be impeached by evidence aliunde. Baker v. Cureton (49 Okla. 15) 150 Pac. 1090; Hathaway v. Hoffman (53 Okla. 72) 153 Pac. 184, Johnson v. Johnson (60 Okla. 206) 159 Pac. 1121."

In Johnson v. Johnson, 60 Okla. 206, 159 Pac. 1121, it is said:

"The appointment of a guardian for a minor by the county court imports general jurisdiction in the court so to do, and the record thereof being regular upon its face, it will be inferred from the fact that such appointment was made that all the facts necessary to vest the court with jurisdiction to make the appointment, including the determination of the proper qualifications of the guardian appointed, had been found to exist before such appointment was made."

We find by reference to section 4 of the Original Creek Agreement, supra, that the allotments of minors shall not be sold during minority. This restriction was removed by the Act of Congress of May 27, 1908 (35 Stat. L. 312), which provides:

"All lands, including homesteads of said allottees enrolled as intermarried whites, as freedmen and as mixed-blood Indians, having less than half Indian blood, including minors, shall be free from all restrictions."

Section 6, Id., provides:

"That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma."

In Chupco et al. v. Chapman et al., 76 Oklahoma, 170 Pac. 259, Justice Rainey, delivering the opinion of the court, said:

"Act of Congress May 27, 1908, c. 199 (35 Stat. L. 312), entitled, 'An Act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes,' is a revising act, and was intended as a substitute for all former acts relating to the subject of such restrictions and operated to repeal the provisions of Act of Congress of April 26, 1906, c. 1876 (34 Stat. L. 137), and previous congressional enactments in conflict therewith on the same subject."

But whether it was intended to supersede that portion of section 4 of the Original Creek Agreement to the effect that guardians or curators appointed for Creek minors shall be citizens, we are not called upon to decide. There must have been some reason at the time the agreement was made for this provision, but we are unable to understand how it could have any force or effect as applied to conditions now existing. It would appear that when Congress gave the probate courts of Oklahoma full and complete jurisdiction over the person and estate of minors, it was intended that the laws of Oklahoma relating to guardians should apply. Any other construction in many instances would nullify the statutes of Oklahoma concerning the competency of persons for guardianship. The provisions of the Oklahoma statutes provid-

ing that the father, in case of his death, the mother, being single, should have the preferential right to the guardianship of their minor children, would be denied; that is, in case of the father not being a Creek citizen, though married to a Creek woman, by whom he had several children, or of a mother not being a citizen, but married to a Creek citizen, by whom she was the mother of several children, and the father was dead. In the first instance mentioned, the father, under this provision of secton 4, supra, would not be qualified to act as guardian of his own children, notwithstanding he might in all other respects be entirely qualified; and in case of his death, the mother, notwithstanding her qualifications in every other respect, would not be competent. We cannot believe that it was ever intended for the section to go to that extent.

(3) The next ground relied upon by the plaintiff for reversal is that the county court of Wagoner county was without jurisdiction to order the sale of the lands of his wards for the reason that the court had denied the order to sell on a previous hearing, and that matters contained in the former petition to sell were the same as in the petition wherein the order to sell was granted; that the judgment of the court refusing the order in the first petition was final; that there had been no appeal therefrom; and that the same had become res adjudicata. We are unable to agree with the contention of plaintiff on this point. The county courts in Oklahoma have general and exclusive jurisdiction to transact any and all business with reference to the estates of minors. See article 7, sec. 13, Constitution of Oklahoma. This jurisdiction cannot be lost except in some manner prescribed by law, and the court has the right at any time to take proper steps to protect the interest of the minor, as it shall find are for the best interest of the minor. The record is silent as to what was before the court when the first petition was denied. We are not able to see from the record that the evidence before the court was the same at the subsequent hearing as it was at the prior hearing. All we do know is, that the first petition was denied. If the contention of plaintiff is sound, then there could never thereafter be authority in the county court to grant an order to sell for the reasons assigned in the first petition. We do not think it can be successfully contended that the order denying the sale would prevent the court from ever at any time in the future granting such an order. Section 6553, Rev. Laws 1910, gives the court the right to make an order to sell the property of a minor for his maintenance and education. Section 6554, Id., gives the right to order a sale for the pur-

pose of investment. The court would have the right to make an order at any time when conditions were changed, and it would have a right upon a reconsideration of the evidence, without any change in conditions, to make an order upon proper motion and notice. So far as we are able to judge from the record, the court did nothing more in this case than to exercise its power in that regard.

In Twin State Oil Co. v. Johnson, 72 Oklahoma, 179 Pac. 605, Chief Justice Hardy said:

"It is now well settled that county courts of this state have full control and jurisdiction of all probate matters, and may at any time prior to the majority of the minor, whose estate is involved in any proceeding pending in said court, upon proper notice and for sufficient legal grounds, modify or vacate any order or judgment made by said court in the interest of said minor. Ozark Oil Co. v. Berryhill, 43 Okla. 523, 143 Pac. 173; Morris et al. v. Sweeny, 53 Okla. 163, 155 Pac. 537."

In Hickory v. Campbell, 75 Oklahoma, 182 Pac. 233, decided by the Supreme Court of Oklahoma, June 17, 1919, Justice Higgins said:

"A probate sale of a minor's land, when the proceeds are merely intended as an investment, is one friendly to the minor, and when it is made to appear to the court prior to the passing of title that it is not to the best interest that the lands be sold, then it is the duty of the court upon proper notice to hear the matter, and, if the best interest of minors require it, to set aside the order previously given authorizing the sale."

Further on in the opinion we find:

"Defendants in error rely upon the Estate of Thomas Spriggs, 20 Cal. 121, and in support of their contention that the decree of sale became final after the expiration of time for an appeal. The same is held in Estate of Leonis, 138 Cal. 194, 71 Pac. 171. We do not believe the law of California is applicable to the case at bar for the reason that the judgments of probate courts there, if no appeal is taken, become final at the expiration of the term, whereas the law of this state, as above stated, is that, until the minor becomes of age, all judgments and orders sleep in the bosom of the court, and may be modified, vacated or set aside during such time upon proper notice and for good cause shown."

While the order empowering the guardian to sell fails in direct terms to vacate the former order denying the petition to sell, the effect of the last order was to annul, vacate and set aside the former order.

The case of Callahan v. Griswold, 9 Mo. 784, is in many respects similar to the case at bar. There the county court had denied a petition for authority to sell a certain estate.

From this order an appeal was taken. The judgment of the lower court was affirmed. Thereafter, a second petition was filed in the county court and an order was made authorizing the sale. Griswold, who had purchased from some of the heirs, objected to the last order and appealed, contending the first order denying the right to sell was res adjudicata. The Supreme Court of Missouri held against this contention, saying:

"It is contended by the defendant in error that the judgment in the case of Hughes, Admr., v. Griswold, which was affirmed by the Supreme Court in 1840, is a bar to any further proceeding on the subject-matter therein adjudicated. We do not regard the refusal of the county court of Warren as a judgment of this character. It may be questioned whether the principle of res adjudicata applies to those decisions which are made by courts acting in a summary way upon an application addressed to their discretionary jurisdiction. In such cases, if the facts upon which relief is claimed be the same upon a second application that they were in the first, by analogy to proceedings in the ordinary course of judicial investigation, parties will generally be held precluded by the result of the first application. *  *  * But it seems that where it subserves the purpose of parties, the court will hear the second application and decide it differently without being bound by the former adjudication. Sampson v. Hart, 14 Johns R. 13. In the case now under consideration, the record does not show what facts were before the court when the application was first rejected by the court of Warren. It seems that the cause when up in this court turned entirely upon the absence of record proof to show the jurisdiction of the circuit court of Franklin county over demands against the estate of R. McKinney, and that the case was not at all decided on its merits. The decision of the county court may have been passed upon the same or similar grounds, and therefore would be no bar, even though the evidence was in other respects substantially the same on the second application as it had been upon the first."

As was said in Holmes v. Holmes, 27 Okla. 140, 111 Pac. 220:

"The orders and decrees of a probate court are not required to recite the existence of facts, or the performance of acts upon which the jurisdiction of the court depends, and the failure to recite such jurisdictional facts does not raise the presumption that such facts do not exist."

In Galvin v. Palmer (Cal.) 66 Pac. 572, it was said:

"Where across the face of a judgment, it was written that it was vacated and set aside, and another judgment of later date was entered on record, which record shows no irregularities, such second judgment is to be regarded in collateral proceedings as the

final and only judgment, and it cannot be impeached by affidavits or matter outside of the record. The court having power under some circumstances to take such action, it will be presumed on collateral attack, the record being silent, that such circumstances existed in th s case."

(4) Plaintiff next contends that the defendant Leonard, who was the purchaser at the guardian's sale, had knowledge of the fraud practiced by the guardian upon the court and upon the ward and next of kin; that, having this knowledge, he was bound by such fraudulent act of the guardian, and the entire proceedings were vitiated by such fraudulent acts; that, as he conveyed the land so acquired by him to his grantee by quitclaim deed, said grantee and all persons holding under him are charged with a knowledge of the fraudulent character of the proceedings, and the defects of the record, which might be raised either upon direct or collateral attack; and that where such purchaser at the guardian's sale, with knowledge of fraudulent, void and irregular proceedings, conveys said real estate to his grantees by quitclaim deed, said grantees and all subsequent grantees take with notice of all defects of the record and fraud, and are not innocent purchasers. The evidence of fraud relied upon by the plaintiff relates to the allegation of the efforts of the guardian to induce the mother of the plaintiff not to appear and object to the sale of the minors' lands, alleging that the guardian promised her that he would use a certain part of the proceeds of the sale to pay off a mortgage against her homestead and certain personal property; and further, that she was induced by the guardian to believe that the entire allotments of the minors were not to be sold, but only 40 acres of each allotment. The allegation is made that Leonard, the purchaser from the guardian, was well aware of all these facts, and was therefore not a bona fide purchaser, and anyone taking title from him by a quitclaim deed is chargeable with like notice and cannot claim the protection accorded a bona fide purchaser. There is no contention on the part of plaintiff that the purchasers from Leonard had direct knowledge of any fraud alleged, but in accepting a quitclaim deed, that that fact, and that alone, was sufficient to put them on notice that there was some defect in the title, and had they prosecuted the inquiry called for by this knowledge, they would have been led to a full knowledge of the fraud. We have been unable to find any authority in Oklahoma directly deciding this point. Our statutes provide two forms of conveyance of real estate. Section 1184, Rev. Laws 1910, prescribes the form for a warranty deed, the effect of which is set out in section 1162, Id. Section 1185, Id., provides:

"A quitclaim deed to real estate may be substantially the same as a warranty deed, with the word 'quitclaim' inserted in connection with the words, 'do hereby grant, bargain, sell, and convey,' as follows: 'Do hereby quitclaim, grant, bargain, sell, and convey,' and by omitting the words, 'and warrant the title to the same'."

In the case of Mosier v. Momsen, 13 Okla. 41, 74 Pac. 905, the court said:

"Our attention is directed by counsel for plaintiff in error to numerous authorities, among which is Oliver v. Piatt, 3 How. 410, and May v. LeClaire, 11 Wall. 217, wherein it is held that a person who holds only by virtue of a quitclaim deed from his immediate grantor, whether he is a purchaser or not, is not a bona fide purchaser. It is not now necessary for us to decide this question, for under our statute the quitclaim deed to defendant in error conveyed to him all the right, title and interest of the Smithers in and to the premises there described. However, it will be found upon an examination that the Supreme Court of the United States in a later case, Moeller v. Sherwood, 148 U. S. 21, held 'that the receipt of a quitclaim deed does not of itself prevent a party from becoming a bona fide holder; and the doctrine expressed in many cases that the grantee in such deed cannot be treated as a bona fide purchaser, does not rest upon any sound principle.'"

In 13 Cyc. 525, with reference to quitclaim deeds, it is said:

"Whether a deed is a quitclaim depends largely upon the words used, but it may be inferred, not only from the terms of the deed, but from the adequacy of the price given, and other circumstances showing the purpose of the instrument; and it is not to be determined by the mere omission of the covenant of general warranty of title."

In McConnell v. Reed, 5 Ill. 117, 38 Am. Dec. 124, it was said:

"A deed of release and quitclaim is as effectual for the purpose of transferring title to land, as a deed of bargain and sale; and the prior recording of such deed will give it a preference over one previously executed, but which was subsequently recorded. In this respect there is no distinction between different forms of conveyance. As a general rule, the one first recorded must prevail over one of older execution, when made in good faith, and where it appears to have been the intention of the parties to convey again the same lands which had been previously conveyed."

This view seems to have been taken by the Supreme Court of Mississippi, in the case of Chapman v. Sims, 53 Miss. 154, in which it was sought to show that the grantee in a quitclaim deed was not a bona fide purchaser. The court said:

"We conclude that there is no authority for

the proposition that a quitclaim deed in the chain of title deprives him who claims under it of the character of a bona fide purchaser. There are dicta and suggestions and inferences to that effect, but we deny and repudiate the proposition as unsound · and insupportable on authority, principle or policy." See Finch v. Trent (Tex. Civ. App.) 22 S. W. 132.

The quitclaim deed executed by the defendant Leonard was just as effective in conveying the title purchased by him at the guardian's sale as if he had executed a warranty deed. In other words, one can be a bona fide purchaser under a quitclaim deed where the vendor undertakes to sell and convey the land described in the deed, as he can under a warranty deed, the difference in form between a quitclaim deed and a warranty deed being that in the former the words "and warrant the title to the same" are omitted. A quitclaim deed made in substantial compliance with the provision of chapter 13, Rev. Laws 1910, conveys all of the right, title, and interest of the maker thereof in and to the premises therein described. Section 1161, Rev. Laws 1910. The records fail to contain copies of any deeds sought to be cancelled: therefore, we are unable to know the exact language used. However, the term "quitclaim" deed is well understood by the legal profession, as well as by the laity, to convey the title then held by the grantor in the lands sold, as would be conveyed by a warranty deed, with the exception that in the former the title is not warranted against the claim of all others, but is good as against the vendor and those claiming under him by title thereafter acquired.

(5) The contention of plaintiff that the judgment of the trial court should be reversed for the reason that the guardian failed to file an inventory of his ward's estate, we think is untenable. Sam Tucker, the father of plaintiffs, had been appointed and qualified as guardian. Upon his death the defendant Leslie was appointed. As the statutes require an inventory to be made, and as it is presumed every officer has complied with the requirements of the law until the contrary appears, we are to presume there was an inventory on file returned by the former guardian. However this may be, we see from the petition filed by the defendant Leslie for the sale of the lands that the ward had no personal property, that the ward owned certain real estate therein described, and that it was to the best interest of the minors that all of said lands be sold. The court could clearly gather from this petition that all the estate of the minor consisted of his allotment, which was sought to be sold. In 21 Cyc. 42, under the heading "Guardian & Ward," appears the following:

"The requirement in a statute that before anyone shall be appointed guardian he shall file a statement of the ward's estate is directory only, and failure to file the statement will not of itself render an appointment void."

(6) Plaintiff next contends that the sale was void for the further reason that no notice was given of the sale of real estate as required by law, that the property to be sold was located in Creek county, whereas the notice of sale described it as being located in Wagoner county. This notice was published in both Creek and Wagoner counties. The publication in Creek county correctly described the lands. The publication in Wagoner county read as follows:

"Notice of Sale of Real Estate in the Guardianship of George Tucker.

"Notice is hereby given in pursuance of an order of the county court of the county of Wagoner, state of Oklahoma, made on the 9th day of October, 1911, that the undersigned guardian of the estate of George Tucker, a minor, will sell at public sale to the highest bidder, subject to confirmation by the court, on Monday, the 6th day of November, A. D. 1911, at ten o'clock A. M., at the courthouse in Sapulpa, Creek county, Oklahoma, all the right, title and interest of said George Tucker, a minor, in and to the following described real estate, situated in Wagoner county, state of Oklahoma, to wit: The SW¼ of the SW¼ of Sec. 3, Twp. 17 N., R. 7 E., and the SW¼ of the SE¼ of Sec. 7, Twp. 17 N., R. 8 E., and the W½ of the SW¼ of Sec. 33, Twp. 18 N., R. 8 E., in Creek county, Oklahoma. Said real estate will be sold on the following terms and conditions, to-wit: All cash upon confirmation of sale by the county court of Wagoner county, Okla."

When any person desiring to bid upon the lands saw this notice, he could not have been misled thereby. Any one would know that the lands were in Creek county and intended to be described as being in Creek county. He would readily see that "Wagoner county" was intended to be Creek county. He would be advised that the land was to be sold at Sapulpa in Creek county, and when so advised, he knew exactly what land was to be sold and where the land was located. We cannot bring ourselves to believe that a defect of this nature could or should affect the validity of the sale. Section 6383, Rev. Laws 1910, provides that the land to be sold must be described with common certainty in the notice. In Richardson v. Farwell (Minn.) 51 N. W. 915, the county and state in which the land was situated were not mentioned in the notice. In passing upon this question, the court said:

"But it is admitted that land of that description, by government subdivisions, is

within the county of Hennepin where the land was sold, and where by statute it was required to be sold; and being land of the minors referred to, the description was not presumptively misleading. There could be no other corresponding description within the county or state, and this court will take notice of."

In Howbert et al. v. Heyle (Kan.) 27 Pac. 116, the court said:

"Where a petition by a guardian to sell certain land belonging to his ward states, among other things, that the ward had no money nor personal property, and that it was to his interest and necessary for his support and education, that the land should be sold, and describes the land as being an undivided one-twelfth interest 'in the following described real estate, to wit: The SE¼ of Sec. 32, R. 17, Twp. 12', without stating specifically in what county or state the land was situated, or whether in range east or west, or township north or south, but land answering to the aforesaid description was in fact situated in Shawnee county, where all the parties interested resided, and where all the proceedings were had, held, that the petition must be held to be sufficient when the sale under it is many years afterwards attacked collaterally."

(7) Plaintiff next contends that the sale of the lands by the guardian was a private sale, and before the court would have jurisdiction to confirm it, it was imperative that the lands to be sold be appraised, and that the court was without jurisdiction to confirm, unless the price bid was 90 per cent. of the appraised value of the same. If the sale herein was private, we agree with the contention of plaintiff. Section 6384, Rev. Laws 1910, provides:

"No sale of real estate at private sale shall be confirmed by the court unless the sum offered is at least 90 per cent. of the appraised value thereof, nor unless such real estate has been appraised within one year of the time of such sale. If it has not been so appraised, or if the court is satisfied that the appraisement is too high or too low, appraisers must be appointed. and they must make an appraisement thereof in the same manner as in case of an original appraisement of an estate. This may be done at any time before the sale or the confirmation thereof."

In Winters v. Okla. Portland Cement Co., 65 Oklahoma, 164 Pac. 965, the court said:

"The words of this section are expressly prohibitory. They do not simply and only say that an appraisement shall be had, but directly say that the court shall not act except under the given conditions. The inhibition strikes at the power of the court, and leaves no discretion whatsoever in the court. It does not pertain to any step intermediate to the requirement of jurisdiction of the sale proceeding and the order of con-

firmation, but to the power to make the order of confirmation itself. The appraisement is not even necessarily a part of the sale proceeding proper, but may have been made at any time within a year prior thereto, and long before the court acquired jurisdiction of the sale proceeding; but the statute provides that the court shall not make the order, except it is in existence and in conformity to it."

Was the sale made by the guardian herein public or private? Section 6563, Rev. Laws 1910, provides if, after full examination by the county court, it appears necessary, or for the benefit of the ward, that his real estate, or some part thereof, should be sold, the court may grant an order therefor, specifying therein the reasons why the sale is necessary or beneficial, and may, if the same has been prayed for in the petition, order such sale to be made either at public or private sale. By reference to the record, we find the petition filed by the guardian for authority to sell prays that upon hearing had, he be authorized to sell at public or private sale. The court thereafter granted the order and authorized the guardian to sell at public sale to the highest bidder. The guardian gave the necessary notice that on the date therein named, he would sell at public sale to the highest bidder. The order confirming the guardian's sale recited that the sale was public. We have carefully examined the record in this case, and are of the opinion that there has been a substantial compliance with the requirements of the statute relative to guardian's sale. Section 6386, Rev. Laws 1910, provides for the return of the sale; that the court or judgment must fix the day for the hearing of such return; provides for the notice that shall be given; that upon the hearing, if the court was of the opinion that the bid was disproportionate to the value, and if it appeared to the court that a sum exceeding such bid at least 10 per cent. might be obtained, the court had authority to vacate the sale, and direct another to be had, of which notice should be given, and the sale in all respects conducted as if no previous sale had taken place; that if an offer of 10 per cent. more in amount than that named in the return be made to the court in writing by a responsible person, it is in the discretion of the court to accept such offer and confirm the sale to such person, or to order a new sale. The return of the guardian set out in full detail all the proceedings had in executing the order of sale. The court had before it full proof of the notice required, and determined that the statutes had been complied with. The order of confirmation contained recitals showing a compliance with all the provisions of the statute, and we are of the opinion that the action of the court in its judicial determination of whether or not

the guardian complied with all the provisions of the statute. should. in case of collateral attack, be treated as conclusive in the absence of fraud.

In Winters v. Okla. Portland Cement Co.. supra, it was said:

"After a county court obtains jurisdiction of a guardianship sale proceeding, all irregularities and defects between the acquirement of jurisdiction and the order of confirmation are cured by the order of confirmation to the extent that the order of confirmation may not be collaterally attacked on account of such irregularity; but this rule does not extend to jurisdictional matters."

(8) The plaintiff further contends that the sale of the real estate herein was secured by fraudulent practices of the guardian; that there was no necessity for the sale of the same; and that the guardian entered into a fraudulent and collusive agreement with Ella Tucker, the mother of the plaintiff, whereby the said guardian, in order to wrongfully and fraudulently induce the said Ella Tucker to consent to the sale of the lands of the plaintiff and his brother, Fred Tucker, and as an inducement for her not to appear. contest or oppose the sale of the same, represented to the said Ella Tucker that one Harsher had a mortgage on the homestead belonging to Sam Tucker, deceased, and which comprised the family homestead of the said Ella Tucker, together with the plaintiff and his minor brother; that the guardian wrongfully and fraudulently represented to the said Ella Tucker that if she would consent to the sale of 80 acres of her minor sons' allotments, that is to say, 40 acres of the allotment of each minor, the guardian would apply the proceeds thereof to the payment and discharge of the mortgage indebtedness; that the said Ella Tucker consented to the sale of 80 acres of the allotments of her minor children as above described; and that she did not hear until a long time thereafter that she had given her consent to the sale of all the allotments of her minor children; that she was deceived and misled in that regard, and that she believed that she had only given her consent to the sale of 80 acres, or 40 acres each out of the allotments of George and Fred Tucker respectively; that the guardian, C. K. Leslie. by fraud and deceit, inserted in said petition the entire allotments of both George and Fred Tucker; that he thereafter purchased the mortgage on the homestead and fraudulently procured an order from the county court of Wagoner county, permitting him to apply $400 out of the proceeds of the sale of the lands of George and Fred Tucker, which he wrongfully converted and applied to the payment of the indebtedness of the said Sam Tucker, deceased; that the said C. K. Leslie had procured his appointment as guardian for no other purpose than the fraudulent intent and purpose of obtaining control of the allotments of the plaintiff herein, and for the purpose of realizing upon said mortgage to his individual advantage and benefit, and to the detriment of the rights of the plaintiff and his brother. Fred Tucker; and that the county court of Wagoner county was deceived and fraud was practiced upon it in not knowing the real facts and purposes of the said Leslie in procuring his appointment as guardian; that at the time the said Ella Tucker consented to the sale, the guardian represented that the land was practically worthless: that it was only a pile of rock and brush, and did not disclose to the mother that it was valuable for oil and gas purposes. It is alleged by the plaintiff that all the above enumerated acts committed by the guardian were well known to the defendant M. B. Leonard prior to the sale of the allotments of the minors to him by the guardian.

The law in its wisdom, and having regard for the interest of minors, requires that in applying for an order to sell, notice thereof shall be given to certain persons. In this case, the allegation is contained in plaintiff's petition that by fraud of the guardian, the mother was induced to give her consent for the sale. If the guardian was guilty of the charges made in the petition, we are forced to say his conduct was very reprehensible. When a demurrer is filed to a petition as defective, in that it does not state facts sufficient to constitute a cause of action, the petition must be liberally construed, and all its allegations taken as true for the purpose of the demurrer; therefore, we take as true the allegation that the guardian had purchased this mortgage against the homestead of Sam Tucker; that he induced Ella Tucker to believe that he was only selling 40 acres each of the allotments of her minor children; that he induced her not to appear before the county court and protest against the sale, and that the court was imposed upon. It is further alleged that the defendant Leonard had notice of the fraudulent acts of the guardian, and as a matter of fact. if this was true, he could not be a bona fide purchaser: therefore, the petition stated facts sufficient to constitute a cause of action against the defendant Leonard at least.

In Blackwell Oil & Gas Co. v. Whitesides, 71 Oklahoma. 174 Pac. 573, it is held that where a general demurrer is filed to a petition. as a whole, if any paragraph of the pleading is good and states a cause of action, the demurrer should be overruled. We hold that the court was in error in sustaining the demurrer as to the defendant M. B. Leonard, the remaining defendants claiming that they had no notice of any fraud and there being no alle-

gation that they had notice, only such as would be conveyed to them by quitclaim deed. In Adams Oil & Gas Co. v. Hudson et al., 55 Okla. 386, 155 Pac. 220, it is held:

"To constitute a 'bona fide purchaser' three things must exist: a purchase in good faith; for value; and without notice; and where a subsequent purchaser interposes the defense of a bona fide purchaser, the burden is upon him to show a purchase for value, and on his failure to do so, he cannot claim the benefits of a bona fide purchaser."

In other words, if Leonard's title was defective, that is, having been induced by the fraud of the guardian, and Leonard had notice of this fraud, then before the grantees from Leonard could claim to be bona fide purchasers, the burden is shifted to them to show that they had no notice of the fraud; that the purchase was in good faith and for value. As we understand the rule in the trial of the cause, the plaintiff would first be required to establish fraud, together with the fact that Leonard had notice. When this was established, then the purchasers from Leonard would be required to introduce evidence showing that they purchased without notice of fraud and for value and in good faith.

Mr. Justice Dunn, speaking for this court on rehearing in the case of Brooks et al. v. Garner, 20 Okla. 236, 94 Pac. 694, quotes approvingly the following from the Supreme Court of Michigan, in the case of Letson v. Reed et al., 45 Mich. 27, 7 N. W. 231, as follows:

"Purchasers of land which has been fraudulently transferred to their grantor must establish the good faith of their purchase, and it cannot be presumed."

In the case of Vose v. Penny, decided by this court June 17, 1919 (Oklahoma) McNeill, J., quotes with approval the following from Bright-Blodgett Co. v. United States, 58 L. Ed. 637, wherein Justice Hughes, discussing the defense of a bona fide purchaser for value, stated the rule as follows:

"In setting up by plea or answer, it must state the deed of purchase, the date, parties, and contents briefly; that the vendor was seized in fee, and in possession; the consideration must be stated, with a distinct averment that it was bona fide and truly paid, independently of the recital in the deed. Notice must be denied previously to and down to the time of paying the money, and the delivery of the deed; and if notice is specially charged, the denial must be of all circumstances referred to, from which notice can be inferred; and the answer or plea show how the grantor acquired title. * * * The title purchased must be apparently perfect, good at law, a vested estate in fee simple. * * * It must be a regular conveyance; for the purchaser of an

equitable title holds it subject to the equities upon it in the hands of the vendor, and has no better standing in a court of equity. * * * Such is the case which must be stated to give defendant the benefit of an answer or plea of an innocent purchaser without notice; the case stated must be made out; evidence will not be permitted to be given of any other matter not set out."

Counsel for plaintiff concede that the proposition presented as to the jurisdiction of the court, regarding the appointment of Leslie as guardian of plaintiff, the mother of plaintiff being a single woman and qualified for the guardianship, is the most important one presented in this case for the consideration of the court; and further concede that upon the court's decision of this proposition largely depends the final determination of the case. Notwithstanding this concession on the part of counsel, we have carefully considered every question presented and argued, we have carefully examined the entire record, and our conclusion is that the judgment of the lower court should be reversed on the eighth proposition presented by plaintiff, and it is so ordered.

All the Justices concur, except KANE. J., absent and not participating.