Sarah Jo LOMON, Ruby Alice Nye and Robert E. Kent, Appellants,

v.

The CITIZENS NATIONAL BANK & TRUST OF MUSKOGEE, Executor of the Estate of Ruby Fullerton, Deceased, Olive Vaughn, James L. Callahan, James L. Callahan, Jr., Lisle G. Kendall, Michael Kendall Callahan and Patrick Lee Callahan, Appellees.

No. 59615.

Supreme Court of Oklahoma.

Oct. 10, 1984.

As Corrected Oct. 15 and Nov. 1, 1984.

James Bishop, Graydon Dean Luthey, Jr., Jones, Givens, Gotcher, Doyle & Bogan, Inc., Tulsa, for appellants.

Joe R. Kennedy, Kennedy, Kennedy, Wright & Stout, Muskogee, for appellees.

DOOLIN, Justice.

The issue presented is whether the decedent's will directs the payment of estate taxes from her residuary estate rather than apportioned among those taking under the will, as prescribed by statute. ·

Ruby Fullerton died testate on March 21, 1981. In the course of the administration of her estate, the Executor appointed pursuant to her will, the Citizen's National Bank and Trust Company of Muskogee, filed with the District Court of Muskogee County a Request for Instructions to determine whether the estate taxes should be apportioned among all legatees and devisees or whether they should be paid solely out of the residuary estate. With the consent of all parties, the trial court converted the Executor's request into a petition for declaratory judgment under 12 O.S.1981, § 1651. After receiving briefs on the issue and hearing oral arguments, the court ordered that the residual legatees alone should bear the burden of all inheritance and estate taxes. This order was based on the court's finding that the Testatrix intended the inheritance and estate taxes to be paid out of the residual estate. Appellants, who are residual legatees, and also

beneficiaries of specific bequests under the will, contend that no such testamentary intention is indicated by the terms of the will. It is not denied, however, that there are adequate funds in the estate to pay all bequests.

■ We noted in *Matter of Estate of Bovaird* [1] that:

"The ultimate placement of the federal estate tax liability is controlled by state law, Congress intended that the federal estate tax shall be paid out of the estate as a whole and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal law."

In Oklahoma, the cardinal rule for the construction of wills is to ascertain the intent of the testator and give effect thereto, either to the full extent or as far as possible.[2] "This intent is to be derived from the language of the will, and considering the instrument as a whole, and the different provisions in relation to one another."[3] Unless some ambiguity or uncertainty arises upon the face of the will, evidence of circumstances and conditions under which the will was made may not be taken into account in determining the testator's intention.[4]

Because of their importance for our determination, the applicable provisions of the will in question are set forth here at some length:

## ARTICLE I

### Payment of Taxes

I direct my Executor hereinafter named to pay all estate and succession taxes levied against my estate and refrain from seeking contributions from any person or entity by reason of funds or properties, being subject to estate tax, which do not come into the possession of my Executor.

## ARTICLE II

(Several specific bequests of tangible personal property.)

## ARTICLE III

I give and bequeath to the First Presbyterian Church of Muskogee, Oklahoma, the sum of $10,000.

## ARTICLE IV

### Gift to Nieces and Nephews

I give and bequeath Three Thousand Dollars ($3,000.00) each to the following named persons:

Lisle G. Kendall 
Robert E. Kent 
James L. Callahan, Jr. 
Michael Kendall Callahan 
Patrick Lee Callahan 
Ruby Alice Nye 
Sarah Jo Lomon

## ARTICLE V

I give and devise to James L. Callahan, Olive Vaughn and Josephine Sharp, my Creek Allotment in the Southeast Quarter of Section 13, Township 17 North, Range 12 East, situated in what is now Tulsa County Oklahoma.

## ARTICLE VI

### Gift to Relatives and In-Laws

I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, and wheresoever situated to the following persons in equal shares as follows:

Alice Callahan, my mother; James L. Callahan, my brother; Josephine Sharp, my sister; Olive Vaughn, my sister; Robert E. Kent, my nephew; Ruby Alice Nye, my niece; Lena Henley, my sister-in-law; and Sarah Jo Lomon, my niece.

---

1. 645 P.2d 500, 502 (Okl.1982), citing *Riggs v. Del Drago,* 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942).

2. *Bovaird,* 645 P.2d 502; *In re Fletcher's Estate,* 308 P.2d 304, 313 (Okl.1957).

3. *In re Fletcher's Estate,* 308 P.2d at 313.

4. 84 O.S.1981, § 152; *Noble v. Noble,* 205 Okl. 91, 235 P.2d 670, 673, 26 A.L.R.2d 1200 (1951).

ARTICLE VII

*Appointment of Executor*

1. I nominate, constitute, and appoint The Citizen's National Bank and Trust Company of Muskogee, Oklahoma as Executor of this, my Last Will and Testament.

2. I hereby authorize and empower my Executor to sell and contract for sale at either public or private sale ... any property belonging to my estate, real, personal or mixed, except my allotment....

 Article I contains the only express reference to the payment of taxes. Although it appears at first glance to have some bearing on the matter at hand, it is basically similar to the following provision which was construed in *In re Fletcher's Estate.*[5]

1. I will and direct the payment of all my just debts and obligations of every kind and character, including funeral expenses and expenses of my last illness, and taxing obligations, State and Federal, and the sums hereinafter set out for Mass Offerings, as soon as possible after my death.

In connection with this provision we said:

Where the statutes make mandatory provisions for payment of debts, etc., testamentary direction that this be done is surplusage and meaningless. Although recognized generally that there may be testamentary provision for a different order of resort to property to pay debts, *this intention* must clearly appear.

\* \* \* \* \* \*

The provision in this will relating to debts and costs was directory only, and in no manner can be construed as clearly evidencing testatrix's intention to appropriate any portion of her estate to pay necessary debts, costs, etc.[6]

The only potentially significant difference between the *Fletcher* provision so interpreted and the one presently before us is the latter's reference to funds or properties "which do not come into the possession of my Executor." This, however, is most reasonably understood as a reference to the Testatrix's "non-probate" assets, such as joint tenancy property, and does not affect the character of Article I for our purposes. We therefore find, as did the trial court, that Article I was directory only, and provides no evidence that the Testatrix intended to place the burden of estate taxes on any particular portion of her estate.

It being established that the will contains no express direction for the payment of taxes, appellees urge that the existence of a residuary clause in the will provides an ample basis for finding an implied intent that the residual estate, and not the general and specific legatees, bear the burden of estate taxes.

Prior to 1965, Oklahoma was a "burden on the residue" state and where all estate property was disposed of by a will that did not designate a specific source from which taxes, debts, and expenses of administration were to be paid, the residuary estate, if any, was required by law to bear the burden of all debts, including taxes and costs of administration.[7] This rule was mandated by the as yet unqualified provisions of 84 O.S. § 3:

The property of a testator ... must be resorted to for the payment of debts in the following order:

1. The property which is expressly appropriated by the will for the payment of the debts.

2. Property not disposed of by the will.

3. *Property which is devised or bequeathed to a residuary legatee.*

4. Property which is not specifically devised or bequeathed, and,

5. All other property ratably .... [emphasis added].

---

5. 308 P.2d at 306, 307.

6. Id. at 312 [emphasis added].

7. *In re Fullerton's Estate,* 375 P.2d 933 (Okl. 1962); *In re Rettenmeyer's Estate,* 345 P.2d 872 (Okl.1958).

In 1965, the exclusive authority of this Statute was limited, first by the enactment of the Uniform Estate Tax Apportionment Act (58 O.S.Supp.1965, § 2001 et seq.), which was repealed in 1969, and finally by a revision of 68 O.S.1981, § 825 enacted in 1974. This revision added the following language:

Unless the will otherwise provides, the [estate] tax shall be apportioned among lineal and collateral persons.

The tax on interests passing to collateral persons shall be apportioned in the proportion that the value of interest received by each collateral person bears to the total of the interests passing to all collateral persons.

Similar provisions, termed "apportionment" or "proration" statutes, have been enacted in over half of the states.[8] In New York, which enacted the first such statute, its effect has been understood. The Court in *In re Estate of Olson*:[9]

Decedent Estate Law § 124 recommended by the Foley Commission and enacted in 1930 (L.1930, c. 709) was an innovation for New York. Many other States have since followed New York's lead. The new statute reversed the established rule of "burden-on-the-residuary" and placed the "burden-on-the-recipient" whether the recipient was the beneficiary of a pre-residuary or a residuary disposition or the recipient of nontestamentary property. The Foley Commission justified the reversal on the ground that the collective experience of the Surrogates established that the new statutory Rule represented the intention of most testators who failed in their wills to give other directions for estate tax apportionment. ... the statutory rule requiring each beneficiary to pay his share of the taxes will apply unless a specific direction otherwise to apportion taxes is included in the will. *A legatee of tangible personal property such as jewelry, fur coats, etc., will be required to con-*

*tribute to the estate tax as will all legatees of dollar dispositions and all devisees of real property.* If testator wishes to exonerate any such dispositions he must so provide in *explicit terms* in his will. [emphasis added].

Similarly, the Supreme Court of Errors of Connecticut explained that state's version of the statute as follows:

The proration statute was enacted by the General Assembly in 1945 .... Prior to that time, the burden of federal and state estate taxes rested on the estate as a whole and, in the absence of a directive in the will to the contrary—a situation which through ignorance, thoughtlessness or carelessness often prevailed—the taxes were paid out of the residuary estate. [Citation omitted.] This created many instances of hardship upon and injustice to widows and children, who, as the natural objects of a testator's bounty, were customarily the residuary legatees and, as such, were frequently saddled with the entire tax, while other beneficiaries, more distantly related to the testator or not related at all, paid no taxes at all. The proration statute was contrived to circumvent these instances of hardship and injustice.

\*　　\*　　\*　　\*　　\*　　\*

Thus, a testator's silence on the subject of taxes now effects a result different from that which formerly prevailed. Prior to the enactment of the proration statute his failure to speak on taxes imposed the burden of their payment upon the residuary estate, while, under the statute, such a failure requires the beneficiary of each gift to pay a proportionate share of the taxes.[10] [emphasis added].

We found the 1974 amendment to 68 O.S. 1981, § 825 to have substantially the same effect in this state, when, in the unanimous opinion *In re Davidson Trust, First Na-*

**8.** *See* Annot. 71 ALR3rd 247, 265 (1976).

**9.** .77 Misc.2d 515, 353 N.Y.S.2d 347, 350 (N.Y. Sur.1974).

**10.** *New York Trust Co. v. Doubleday,* 144 Conn. 134, 128 A.2d 192.

*tional Bank in Bartlesville v. Faulkner,* et al.[11] we said:

"Having found § 825 constitutionally clear and unambiguous on its face, we need not respond to appellant's contention that estate taxes shall be paid out of the residue of the estate, that law having been supplemented by § 825."

In addition, in *Matter of Estate of Boviard,*[12] *we expressly adopted the judicial doctrine of equitable apportionment*[13] *which states that "the burden of federal estate tax (falls) on the property which generates the tax, and exonerates therefrom property which does not*[14] *absent a 'clearly expressed intention' to the contrary on the part of the testator."*[15]

Although we are aware of at least one case[16] where a court has indicated that bequest of specific sums of money, such as those given in Article IV of the will now before us, can be sufficient basis to imply an intent on the part of the testator that the bequests be given free of taxes and to overcome the applicability of the apportionment statute, we decline to adopt such standard. To do so would, we feel, undermine the legislative purpose and intent embodied in the enactment of § 825, run contrary to the interpretations given similar statutes by the majority of courts,[17] and "reduce the judicial doctrine of equitable apportionment to a mere legal platitude."[18]

The will before us evidences no clearly expressed intention on the part of the testatrix to exempt any bequests from the burden of estate taxes or to place all of that burden on the residuary estate. Any attempt we might make to imply such an intent would be sheer speculation. Accordingly, the decision of the trial court is reversed and remanded with instructions to apportion the estate taxes according to § 825 among all the specific and residuary legatees with the exception of the charitable legatee, First Presbyterian Church of Muskogee, Oklahoma, which is relieved of the tax burden generated by other property under our ruling in *Davidson.*[19]

REVERSED AND REMANDED.

All Justices concur.

---

11. 641 P.2d 1110, 1113 (Okl.1982).

12. 645 P.2d 500, 505 (Okl.1982).

13. And expressly overruled the portions of the *Rettenmeyer* opinion cited supra Note 5 that conflicts with that doctrine.

14. *In re Estate of Wahlen,* 505 S.W.2d 99, 106 (Mo.App.1973) (also cited in *Davidson* ).

15. Id. at 112.

16. *In re Estate of Wright,* 391 Pa. 405, 138 A.2d 102 (1958).

17. See Annot. 70 A.L.R.3d 630 and cases cited therein.

18. *Estate of Wahlen,* 505 S.W.2d at 112.

19. 641 P.2d at 1114.