848 P.2d 1146 (1993)
In the Matter of the ESTATE OF Edna L. Rogers FLOWERS, Deceased.
Lois L. Flowers HOOPER, Appellee,
v.
Nola CLINKINGBEARD, Lillian Fowler, Ratha Reynolds and Faye Davis Dattuso, Appellants.
No. 77386.
Supreme Court of Oklahoma.
March 16, 1993.
Mary S. Robertson, Steven P. Cole, Oklahoma City, for appellants.
Lawrence W. Parish, Joel D. Butterworth, Oklahoma City, for appellee.
*1148 KAUGER, Justice:
Two issues[1] are presented: 1) whether the appellee, Lois L. Flowers Hooper (Hooper/adopted daughter/pretermitted heir), qualifies as a pretermitted heir under 84 O.S. 1991 § 132;[2] and 2) whether extrinsic evidence is admissible to demonstrate the adoptive mother's intent. We find that: 1) The passage of the Uniform Adoption Act (Adoption Act), 10 O.S. 1991 § 60.1 et seq. in 1957 abolished all pre-existing differences between adopted and natural children. Because the clear language of 10 O.S. 1991 § 1132[3] provides that termination of parental rights does not affect a child's right to inherit from its parent, Hooper qualifies as a pretermitted heir under 84 O.S. 1991 § 132.[4] and 2) The existence of an order terminating the testatrix's parental rights is an extraneous fact rendering the will ambiguous. Parol evidence is admissible to ascertain the adoptive mother's intent.

FACTS
On December 2, 1939, Edna L. Rogers Flowers' (Flowers/adoptive mother/deceased/testatrix) and her husband adopted the appellee, Lois L. Flowers Hooper (Hooper/adopted daughter/pretermitted heir) and Hooper's brother, Don L. Flowers (brother/adopted son). Four years later, Flower's husband petitioned the Okfuskee County Court to declare Hooper a delinquent child. At the hearing on the petition on June 30, 1943, Hooper was found delinquent. Hooper's care and custody were committed to the State. The Flowers relinquished all rights as parents of Hooper; and the court's order provides that they were released from all further liabilities and responsibilities as Hooper's parents.[5] The Flowers made no attempt to terminate their rights to their adopted son. From *1149 1943 until she reached majority, Hooper remained in foster care. Her support was provided by the State of Oklahoma. Between her placement in foster care and 1982, Hooper testified that she visited with her adoptive mother approximately five times. On at least one of these occasions, Flowers traveled to Tulsa to see Hooper. On another, Hooper claims to have lived with her adoptive mother for a short period of time. There were also alleged telephone contacts.
Flowers executed her will on June 27, 1989. She died on May 14, 1990. On May 21, 1990, Debbie Parker, the named personal representative, filed Flowers' will for probate. The appellants, Nola Clinkingbeard, Lillian Fowler, Ratha Reynolds and Fay Davis Dattuso (collectively, beneficiaries/sisters), are Flowers' sisters. They are all named as devisees and/or beneficiaries in Flowers' will.
On June 1, 1990, Hooper filed a petition to receive Flowers' estate as a pretermitted heir pursuant to 84 O.S. 1991 § 132.[6] This cause arises out of the sisters' objection to Hooper's petition. On August 21, 1990, the trial court held a hearing in which oral and documentary evidence were presented. The trial court found that Hooper qualified as a pretermitted heir and that nothing on the face of the will indicated an ambiguity allowing the introduction of extrinsic evidence.[7] The Court of Appeals affirmed. It found that: 1) adoptive parents' parental rights could not be legally severed in 1943; and 2) extrinsic evidence was not admissible to establish the testatrix's intent to disinherit her adopted daughter. We granted certiorari on November 23, 1992, to determine: 1) whether the termination of parental rights affects the adoptive daughter's right to inherit from her adoptive mother as a pretermitted heir under 84 O.S. 1991 § 132; and 2) whether parol evidence is admissible to ascertain the adoptive mother's testatorial intent.

I.

THE PASSAGE OF THE UNIFORM ADOPTION ACT (ADOPTION ACT), 10 O.S. 1991 § 60.1 ET SEQ. IN 1957 ABOLISHED ALL PRE-EXISTING DIFFERENCES BETWEEN ADOPTED AND NATURAL CHILDREN. BECAUSE THE CLEAR LANGUAGE OF 10 O.S. 1991 § 1132 PROVIDES THAT TERMINATION OF PARENTAL RIGHTS DOES NOT AFFECT A CHILD'S RIGHT TO INHERIT FROM ITS PARENT, HOOPER QUALIFIES AS A PRETERMITTED HEIR UNDER 84 O.S. 1991 § 132.
Both parties argue that a primary issue in the cause concerns Hooper's status as an adopted child. Clinkingbeard asserts that the trial court had the authority to sever the parental relationship between an adopted child and his/her adoptive parents in 1943. Hooper insists that the trial court lacked authority to terminate the parent-child relationship absent a second adoption. However, this issue is not dispositive.[8] As *1150 the following discussion demonstrates, even if the parental tie was severed in 1943, Hooper qualifies as a pretermitted heir under 84 O.S. 1991 § 132.[9]
In 1957, Oklahoma adopted the Uniform Adoption Act (Adoption Act), 10 O.S. 1991 § 60.1 et seq. In Conville v. Bakke, 400 P.2d 179, 192-93 (Okla. 1964), this Court discussed the Legislature's intent in enacting the Adoption Act. We specifically recognized in Conville that in repealing the prior law relating to the inheritance rights of adopted children the Legislature intended that all adopted children  those adopted before 1957 and those adopted after enactment of the Adoption Act  be treated similarly. An argument that the pre-1957 adoption law remained in effect for the purpose of determining heirs of persons dying after 1957 if the heir was adopted prior to the effective date of the Adoption Act was found unpersuasive.
In Conville, we recognized the Legislature's authority to provide for the prospective operation of a statute. We also noted that the Legislature did not exercise that authority in the Adoption Act. Instead, it created a system in which all adopted children are treated similarly for the purposes of inheritance and moved Oklahoma into the modern trend of placing adopted children upon the same footing as natural offspring. We will not today step back, through judicial fiat, to a system which treats those children differently based upon their date of adoption. Were we to do so, it would unravel the law established by judicial decision, and result in the creation of an unconstitutional special law[10] and a denial of equal protection under the law.[11]
The findings of Conville were reinforced in Hines v. First Nat'l Bank & Trust Co., 708 P.2d 1078, 1080 (Okla. 1985). Hines involved the right of a an adopted child to inherit from the lineal kindred of the adoptive parent. In Hines, we stated:
"Although the Uniform Adoption Act was not enacted until 1957, and the appellant was adopted in 1950, generally the right of an adopted child to inherit is decided by the law in force at the death of the testatrix/testator not the date of the adoption."
The child in Hines, adopted in 1950  seven years before the enactment of the Adoption Act  was found to be entitled to inherit from its lineal ancestors although inheritance *1151 would not have been allowed under the prior law.
Hein v. Hein, 431 P.2d 316, 318 (Okla. 1967), was promulgated after Conville and before Hines. However, it provides good rationale for an across-the-board application of the Adoption Act. In Hein, we refused to apply the Adoption Act where the testator died before the Act's adoption. In doing so, we reasoned that a will is ambulatory during the maker's life and may be changed until the date of death. Certain presumptions are indulged in ascertaining a decedent's intent. In Hein, we determined that a testator/testatrix is presumed to know the law in effect at the time of the execution of a will. Here, when the adoptive mother executed her will in 1989, the current Adoption Act had been in force and effect for thirty-two years; Conville and Hines had been part of our jurisprudence for twenty-five and four years, respectively.
The Adoption Act abolished all pre-existing differences between adopted and natural children.[12] The right of an adopted child to inherit is decided by the law in force at the death of the testatrix/testator not the date of the adoption.[13] Flowers died in 1990, after the Adoption Act became law. Under the Adoption Act, the adoption decree establishes the relationship of natural parent and natural child between the adoptive parent and the adopted child for all purposes  including the mutual rights of inheritance and succession. Adopted children may not be eliminated as beneficiaries or as devisees absent a clear and explicit expression to do so.[14]
Title 10 O.S. 1991 § 1132[15] describes the effect a termination of parental rights has on the parent-child relationship. Section 1132 provides that the termination of parental rights negates the parent's rights to inherit from the child. The statute specifically provides that termination shall not "in any way affect the right of the child to inherit from the parent." The determination of legislative intent controls judicial statutory interpretation.[16] However, it is unnecessary to apply rules of construction to discern Legislative intent if the will is clearly expressed.[17] Pursuant to the plain language of § 1132, termination of parental rights does not affect the right of the child to inherit from the parent. Because Flowers died after the enactment of the Adoption Act abolishing all differences between natural and adopted children and because the clear language of 10 O.S. 1991 § 1132 provides that termination of parental rights shall not affect a child's right to inherit from its parent, Hooper qualifies as a pretermitted heir under 84 O.S. 1991 § 132.[18]

II.

THE EXISTENCE OF AN ORDER TERMINATING THE TESTATRIX'S PARENTAL RIGHTS IS AN EXTRANEOUS FACT RENDERING THE WILL AMBIGUOUS. PAROL EVIDENCE IS ADMISSIBLE TO ASCERTAIN THE ADOPTIVE MOTHER'S INTENT.
The sisters assert that the existence of the order terminating the parental tie between Flowers and Hooper creates an ambiguity in the will which may be explained *1152 by the introduction of parol evidence. Hooper insists that extrinsic evidence may be used only when there is an ambiguity on the face of the will. We disagree.
Both parties rely upon this Court's pronouncement in Matter of Estate of Crump, 614 P.2d 1096, 1098 (Okla. 1980). In Crump, we recognized the general rule that under 84 O.S. 1991 § 132[19]  the pretermitted heir statute  intentional omission to provide for the testator's issue must appear from the four corners of the testator's will. However, the Court also noted an exception to the parol evidence rule. Under this exception, parol evidence is admissible to resolve ambiguous expressions used in the text or created by the existence of facts extraneous to it.[20] The only argument made in Crump for the application of the exception to the parol evidence rule was premised on the testator's disposition of his entire estate. Testatorial disposition of an entire estate does not alone evince an intent to omit to provide for a child or a deceased child's issue.[21] Parol evidence was not allowed to show the testator's intent to disinherit his granddaughter in Crump.
The instant cause is similar to Crump in that the entire estate was given to Flowers' sisters in the will. The cause differs in that there is an extraneous fact making the will ambiguous  the termination order, duly filed in a court of record and admitted by the trial court. The very existence of this order raises questions concerning Flowers' intent. If Flowers thought the termination order ended any relationship between she and Hooper, the failure to mention Hooper in the will may well have been intentional. If she believed that some familial relationship continued to exist, did Flowers' stated intent to disinherit her adopted son and his "kin" coupled with the false statement that she had only an adopted son create an ambiguity within the will?[22] The intention of the testator is controlling; when the Court construes a will, it must ascertain and give effect to the testator's intent, unless the intent attempts to effect what the law forbids.[23] Here, the termination order makes the admission of extrinsic evidence necessary to determine intent. We find that the existence of the termination order is an extraneous fact rendering the testatrix's will ambiguous. Parole evidence is admissible to ascertain the adoptive mother's intent.

CONCLUSION
Whether Hooper's legal relationship as a child was severed by the termination order does not affect her status as a pretermitted heir. The law in existence at Flowers' death is controlling. Because Flowers died after the passage of the Uniform Adoption Act (Adoption Act), 10 O.S. 1991 § 60.1 et seq. and because, pursuant to 10 O.S. 1991 § 1132,[24] termination of parental rights does not affect an adopted child's right to inherit from its adoptive parent, Hooper qualifies as a pretermitted heir under 84 O.S. 1991 § 132.[25] Generally, extrinsic evidence is not admissible to show testamentary intent under the pretermitted heir statute, 84 O.S. 1991 § 132.[26] An exception to the rule is allowed when the will is rendered ambiguous by an extraneous fact.[27] Here, the existence *1153 of the termination order is an extraneous fact rendering the provisions of the will ambiguous. Parol evidence is admissible to establish intent.[28]
CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
ALMA WILSON, SUMMERS and WATT, JJ., concur.
HODGES, C.J., concurs specially.
LAVENDER, V.C.J., and SIMMS, HARGRAVE and OPALA JJ., dissent.
HODGES, Chief Justice, concurring specially.
The majority holds that parol evidence is admissible to resolve an ambiguity as to the testator's intention in omitting her adopted daughter from the will. While I concur in the finding of an ambiguity, such a finding is not necessary in order to admit extrinsic evidence to determine the testator's intent in omitting the child.
As I stated in my dissent In re Estate of Glomset, 547 P.2d 951, 954 (Okla. 1976):
The purpose and legislative intent of [Okla. Stat. tit. 84, § 132] is to protect children unintentionally omitted from the will. It is not to be construed to alter the testamentary intent of the testator by including children he intentionally excluded from his estate.
There is no language in section 132 which prohibits a court from considering extrinsic evidence to determine the intent of the testator in omitting a child from a will.
Because I would admit extrinsic evidence even without a finding of ambiguity in the will, I concur specially.
OPALA, Justice, dissenting.
The court pronounces that the testatrix's adopted daughter qualifies as a pretermitted heir and concludes that her pretermitted-heir status would not be affected even if it were shown that her filial bond was terminated by a 1943 county court order. The court's decision rests on three grounds: (1) the right of an adopted child to inherit is measured by the law in force at the decedent's death and not on the date of adoption, and that law, the Uniform Adoption Act,[1] in force at the time of Flowers' death, abolishes all differences between the rights of adopted and natural children; (2) under the provisions of 10 O.S. 1991 § 1132,[2] an adopted child's right to inherit from its adoptive parent survives the judicial termination of a parental bond; and (3) because the court views the 1943 county court order terminating the testatrix's parental bond as an extraneous fact that renders the will ambiguous, it remands the cause for further proceedings in the district court to establish the testatrix's intent by parol evidence.
I must recede from today's pronouncement. I would hold that (a) the 1943 order's severance of the parental tie is facially void and that (b) neither the facial invalidity of the filial bond's extinguishment nor the testatrix's erroneous belief that her parental bond to the adopted daughter had been terminated serves as an extraneous fact that injects ambiguity into the testamentary exclusion of the adopted daughter.

I

THE ANATOMY OF LITIGATION
Appellee Lois Hooper [Hooper] and her brother were adopted in 1939 by Edna Flowers [Flowers] and her husband.[3] Hooper's *1154 adoptive father later brought a proceeding in the juvenile division of the county court to adjudicate her delinquency status.[4] A 1943 order issued in that proceeding not only determines Hooper to be a delinquent child but also severs her filial bond to the adopted parents. Hooper's adoptive mother died in 1990. Her will recites that she has no natural heirs, but one adopted child, a son (who is Hooper's brother).[5] After Flowers' will was admitted to probate, Hooper moved for adjudication of her status as pretermitted heir. The trial court held that she was the decedent's adopted child and entitled to take as a pretermitted heir. The Court of Appeals affirmed.

II

THE 1943 ORDER OF THE COUNTY COURT SITTING AS A JUVENILE COURT IS FACIALLY VOID PROTANTO  TO THE EXTENT THAT IT SEVERS HOOPER'S FILIAL BOND WITH FLOWERS
The now-defunct county courts were courts of limited jurisdiction and could only exercise the power specifically conferred by the then-effective Judicial Article[6] and *1155 by those express statutory provisions which were not inconsistent with our fundamental law.[7] Not until 1965 did our lawmaking body vest in the county court the power to sever parental rights in the context of a juvenile case.[8] The power to terminate by judicial decree the natural bond between parent and child was unknown to the common law. One's status as a parent was regarded by the unwritten law of England as indestructible.[9]
Because in 1943 the county court lacked power to terminate parental rights, it was utterly without cognizance to sever a child's bond in a delinquency proceeding. The 1943 order was hence coram non judice[10] to the extent that it extinguishes Flowers' parental status vis-a-vis Hooper.
When a complete absence of jurisdiction appears on the face of the judgment roll,[11] the court's decision is void and subject to vacation on direct or collateral attack.[12] A decision is deemed void only when the face of the record reveals that at least one of the three critical elements of jurisdiction was absent, i.e., (1) jurisdiction over the parties, (2) jurisdiction over the subject matter or (3) jurisdictional power to pronounce the particular decision that was rendered.[13]
Although in 1943 a county court lacked cognizance to terminate a parental bond, it had the power to set aside its adoption orders or decrees under the terms of 12 O.S. 1941 §§ 1031 et seq.[14] The 1943 order, entered in a juvenile delinquency case, cannot qualify as an effective vacation of the adoption decree.[15]
*1156 I would hence hold that, insofar as the 1943 juvenile proceeding order severs Flowers' parental status vis-a-vis her adopted daughter, it is facially dehors the county court's cognizance and hence void on the face of the judgment roll for want of subject-matter jurisdiction[16] as well as of the power to render that decision.[17]

III

THE FACIAL INVALIDITY OF THE PARENTAL RENTAL BOND'S SEVERANCE BY THE 1943 ORDER IS NOT AN EXTRANEOUS FACT THAT MAY INJECT AMBIGUITY INTO FLOWERS' TESTAMENTARY INTENT TO EXCLUDE HOOPER, NOR DOES IT RENDER THAT EXCLUSION INEFFICACIOUS
Because Hooper's filial bond remained intact, the critical question to be answered is whether Flowers' will sufficiently demonstrates her intent to exclude Hooper from any bounty.
From the four corners of the will it is obvious that Flowers did not recognize Hooper as her adopted daughter and had no intention of favoring her with a testamentary gift. An ambiguity may arise from a fact or circumstance  extraneous to the will  which injects uncertainty as to the testatrix's intent to disinherit one's child or issue.[18]The existence of the 1943 order is not an extraneous fact that brings into question or casts a cloud upon Flowers' intent to disinherit Hooper. Neither is that intent clouded by the absence of a valid parental bond's severance. The statement in Flowers' will  that she has but one adopted child  while a legal inaccuracy, creates no ambiguity. This recitation  though contrary to legal reality  does not draw into question testatrix's shown intent to exclude Hooper.
In short, the four corners of the will unequivocally show that Flowers rejected Hooper as an adopted daughter. I would hence hold that the 1943 termination order's invalidity is not an extraneous fact that injects ambiguity as to the testatrix's intended exclusion of Hooper.

IV

AFTER-ENACTED LEGISLATION
The parental bond of Flowers to Hooper remained unextinguished by the facially void 1943 order. Even if that order had been efficacious, the subsequent enactment of 10 O.S. 1991 § 1132 in 1968 could not be applied retroactively to preserve Hooper's inheritance rights from Flowers' estate. Absent a plain legislative intent to the contrary, statutes are generally presumed to operate prospectively only.[19] There is no indication in the text or title of § 1132 that it was ever intended to resurrect a severed filial bond that stood validly extinguished long before the statute's enactment.[20]

SUMMARY
The 1943 order's severance of the filial bond is void on the face of the county court's judgment roll in the juvenile delinquency case where it was entered. Neither *1157 the facial invalidity of the bond's severance nor the testatrix's erroneous belief that her parental ties to Hooper had been legally terminated serves as an extraneous fact that injects ambiguity into the testatrix's intent to exclude Hooper from any bounty.
I would hence hold that Hooper is not a pretermitted heir.
NOTES
[1] On appeal, Flowers asserted that the testatrix's stated intent to disinherit her adopted son and his "kin" coupled with the false statement that she had only one adopted child created an ambiguity within the will allowing the admission of extrinsic evidence. This issue is not presented in the petition for certiorari. The question of whether there are ambiguities relating to other issues present in the will at bar is not before us. Matter of Estate of Crump, 614 P.2d 1096, 1099 (Okla. 1980). As to the introduction of parol evidence, we address only the issue of whether the existence of an order terminating the testatrix's parental rights is an extraneous fact rendering the will ambiguous.
[2] Title 84 O.S. 1991 § 132 provides:

"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator, as if he had died intestate, and succeeds thereto as provided in the preceding section."
[3] Title 10 O.S. 1991 § 1132 provides:

"The termination of parental rights terminates the parent-child relationship, including the parent's right to the custody of the child and his right to visit the child, his right to control the child's training and education, the necessity for the parent to consent to the adoption of the child and the parent's right to the earnings of the child, and the parent's right to inherit from or through the child. Provided, that nothing herein shall in any way affect the right of the child to inherit from the parent."
Unlike the result reached in termination proceedings, we note that a finding of the deprived status of a child does not deprive parents of the child of their parental rights except in limited circumstances. 10 O.S. 1991 § 1130.
[4] Title 84 O.S. 1991 § 132, see note 2, supra.
[5] The Okfuskee County court's order provides in pertinent part:

"... IT IS THEREFORE the Order of the Court that said child be, and is hereby adjudged a delinquent minor child and is hereby made a ward of the court.
It is further Ordered that said child be, and she is hereby committed temporarily to the care and custody of the Child Welfare Division of the Department of Public Welfare of the State of Oklahoma until further Order of the Court.
It is further ordered that parents, John L. Flowers, and his wife, Edna Louise Flowers, are hereby released from further liabilities and responsibilities as parents of said child, and the care and custody of said child shall henceforth be given to the Child Welfare Division of the State Welfare Department until further Order of the Court...."
[6] Title 84 O.S. 1991 § 132, see note 2, supra.
[7] The sister's were prevented from questioning Hooper on specifics as to her relationship with Flowers and other family members. They offered proof that Flowers stated that Hooper was not her daughter after the termination proceedings in 1943; and that Flowers told her sister that her safety deposit box contained papers showing that the adoption had been annulled. The sisters would have presented testimony that an envelope was in Flowers' safety deposit box containing the termination papers and that on the envelope, Flowers had made the following notation:

"Feb 26  1977. Donnie If Louise makes claims to any of my estate this will prove she has no rights to any thing Mom, Edna McDowell"
The envelope also contained a notation in the adoptive father's handwriting providing:
"Louise anul papers."
The sisters would have offered testimony that Flowers stated that the papers proved that Hooper was not an adopted daughter and that she did not have a daughter.
[8] Although we do not consider the issue to be dispositive, we do note that in In re Talley's Estate, 188 Okl. 338, 109 P.2d 495, 498, 132 A.L.R. 773, 777 (1941), decided only two years before Flowers' attempted to sever the parental bond, this Court determined that the parental rights of adoptive parents could be terminated. The child in Talley was originally adopted from his natural parents. The adoptive parent-child relationship was severed when the natural father adopted the child with the adoptive parents' consent. In Talley, this Court held that the adoptive child was not entitled to share in the first adoptive parents' estate as a pretermitted heir. However, in so holding, the Court specifically stated that its holding was not premised on a belief that the first adoption was revoked by the second adoption order. Talley appears to turn on the fact that an adoption may sever the natural parents' right to a child but it does not negate the blood relationship. The Talley court refused to find that an adopted child could inherit from prior adoptive parents in the same manner that an adopted child may continue to inherit from natural parents. The Court of Appeals rejected Talley in Matter of Estate of Baxter, 827 P.2d 184, 188 (Okla. App. 1992). After a marriage in 1954, the husband in Baxter adopted his wife's two children. The couple was later divorced. Pursuant to the divorce decree, the husband relinquished all rights to the children and the mother was ordered to "adopt" the children. Upon the father's death, the adopted children sought to share in his estate. The Court of Appeals rejected Talley holding that the adoptive father's parental rights were never formally vacated and that the adoptive children were entitled to inherit.
[9] Title 84 O.S. 1991 § 132, see note 2, supra.
[10] The Okla. Const. art. 5, § 46 provides in pertinent part:

"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
... Authorizing the adoption or legitimation of children;
Changing the law of descent or succession ..."
[11] The Okla. Const. art. 2, § 7 provides:

"No person shall be deprived of life, liberty, or property, without due process of law."
U.S. Const. amend. 5 provides in pertinent part:
"No person shall be ... deprived of life, liberty, or property, without due process of law ..."
U.S. Const. amend. 14, § 1 provides in pertinent part:
"... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
[12] Hines v. First Nat'l Bank & Trust Co., 708 P.2d 1078, 1080 (Okla. 1985); Conville v. Bakke, 400 P.2d 179, 192-93 (Okla. 1964); Hurt v. Noble, 817 P.2d 744, 746 (Okla. App. 1991); Annot., "Adopted Child as Subject to Protection of Statute Regarding Rights of Children Pretermitted by Will, or Statute Preventing Disinheritance of Child," 43 A.L.R.4th 948, 952-57 (1986).
[13] Hines v. First Nat'l Bank & Trust Co., see note 12, supra; Conville v. Bakke, see note 12 at 193, supra.
[14] Hines v. First Nat'l Bank & Trust Co., see note 12 at 1081, supra.
[15] Title 10 O.S. 1991 § 1132, see note 3, supra.
[16] Fuller v. Odom, 741 P.2d 449, 452 (Okla. 1987); Matter of Phillips Petroleum Co., 652 P.2d 283, 285 (Okla. 1982); Becknell v. State Indus. Court, 512 P.2d 1180, 1183 (Okla. 1973).
[17] Fuller v. Odom, see note 16, supra; Northwest Datsun v. Oklahoma Motor Vehicle Comm'n, 736 P.2d 516 (Okla. 1987); Duesterhaus v. City of Edmond, 634 P.2d 720, 722 (Okla. 1981).
[18] Title 84 O.S. 1991 § 132, see note 2, supra.
[19] Id.
[20] See also, In re Estate of Sharp, 512 P.2d 160, 165-66 (Okla. 1973); Matter of Estate of Eversole, 787 P.2d 470, 473 (Okla. App. 1989).
[21] Matter of Estate of Severns, 650 P.2d 854, 857 (Okla. 1982); Estate of Crump, see note 1 at 1098, supra.
[22] We do not determine this issue. See discussion note 1, supra. See also, Matter of Estate of Hester, 671 P.2d 54, 55 (Okla. 1983) (Testator's false statement that he had no children combined with complete disposition of property constituted appearance of intention to omit to provide for son.).
[23] Lomon v. Citizens Nat'l Bank, 689 P.2d 306, 308 (Okla. 1984); Matter of Estate of Westfahl, 674 P.2d 21, 24 (Okla. 1983); Estate of Smith v. Williams, 674 P.2d 17, 19 (Okla. 1983).
[24] 10 O.S. 1991 § 1132, see note 3, supra.
[25] Title 84 O.S. 1991 § 132, see note 2, supra.
[26] Id.
[27] Matter of Estate of Crump, see note 1 at 1098, supra.
[28] The evidence presented by the sisters appears sufficient to establish Flowers intent that Hooper not share in her estate. However, the evidence was presented as an offer of proof. Because Hooper has not had an opportunity to cross examine the witnesses who would testify on behalf of Flowers and because she has not been allowed to present her own supporting evidence on intent, the cause is remanded for a determination of intent by the trier of fact.
[1] 10 O.S. 1991 §§ 60.1 et seq.
[2] The pertinent terms of 10 O.S. 1991 § 1132 are:

"The termination of parental rights terminates the parent-child relationship, including the parent's right to the custody of the child and his right to visit the child, his right to control the child's training and education, the necessity for the parent to consent to the adoption of the child and the parent's right to the earnings of the child, and the parent's right to inherit from or through the child. Provided, that nothing herein shall in any way affect the right of the child to inherit from the parent."
[3] The petition for adoption (with consent) and decree of adoption, dated December 2, 1939, are of record in the County Court of Okfuskee County. Transcript of August 21, 1990 [Tr.], petitioner's exhibits 1 and 2.

Adoption was viewed in 1939 as a private contract that required approval by the state. Jones v. Loving, Okl., 363 P.2d 512, 513-514 (1961); Ex parte Helscel, Okl., 268 P.2d 287, 289 (1954); In re Hughes, 88 Okl. 257, 213 P. 79, 82 (1923).
[4] The petition and order, dated June 30, 1943, are of record in the County Court of Okfuskee County, sitting as a Juvenile Court. Tr., defendants' exhibits 1 and 2.
[5] The critical provision of Flowers' will states:

"I am a widow, unmarried, and have no heirs of my body but do have an adopted son, Don L. Flowers. I have grandchildren, children of Don L. Flowers. Because of a terrible injustice done to me by my son, Don L. Flowers, I leave him nothing in this my will and do hereby disinherit him and all of his kin and wife and all of my Grandchildren, namely, ... ." (Emphasis supplied.)
[6] Art. 7, §§ 12-17, Okl. Const. (repealed in 1967, eff. Jan. 13, 1969).

The pertinent terms of Art. 7, § 12, Okl. Const. (repealed in 1967), were:
"The County Court, co-extensive with the county, shall have original jurisdiction in all probate matters, and until otherwise provided by law, shall have concurrent jurisdiction with the District Court in civil cases in any amount not exceeding one thousand dollars, exclusive of interest: Provided, That the County Court shall not have jurisdiction in any action for malicious prosecution, or in any action for divorce or alimony, or in any action against officers for misconduct in office, or in actions for slander or libel, or in actions for the specific performance of contracts for the sale of real estate, or in any matter wherein the title or boundaries of land may be in dispute or called in question; nor to order or decree the partition or sale of real estate, not arising under its probate jurisdiction. * * *"
It shall have such appellate jurisdiction of the judgments of justices of the peace in civil and criminal cases as may be provided by law, or in this Constitution. The County Court shall have jurisdiction concurrent with justices of the peace in misdemeanor cases and exclusive jurisdiction in all misdemeanor cases of which justices of the peace have not jurisdiction. In the absence of the Judge of the District Court from the county, or in case of his disqualification for any reason, the County Court, or Judge thereof, shall have power to issue writs of injunction in matters about to be brought or pending in the District Court; and to issue writs of injunction, mandamus, and all writs necessary to enforce the jurisdiction of the County Courts; and issue writs of habeas corpus in cases where the offense charged is within the jurisdiction of the County Court or any other court or tribunal inferior to said court... ."
The pertinent terms of Art. 7, § 13, Okl. Const. (repealed in 1967) were:
"The County Court shall have the general jurisdiction of a Probate Court. It shall probate wills, appoint guardians of minors, idiots, lunatics, persons non compos mentis, and common drunkards; grant letters testamentary and of administration, settle accounts of executors, administrators, and guardians; transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons non compos mentis, and common drunkards, including the sale, settlement, partition, and distribution of the estates thereof. * * *"
The quoted provisions of the Judicial Article were repealed in 1967; the enactment of what is now Article 7 was proposed by Laws 1967, p. 698, H.J.R. No. 508, and adopted at an election on July 11, 1967. For county court jurisdiction see Cassina v. Jones, Okl., 340 P.2d 482, 484 (1959); In re Johnson, 72 Okl. 174, 179 P. 605, 607 (1919).
[7] Pre-1969 district courts, on the other hand, were courts of general jurisdiction. Art. 7, § 7, Okl. Const. (repealed in 1967, eff. Jan. 13, 1969); Flick v. Crouch, Okl., 434 P.2d 256, 261 (1967). Since 1969 district courts exercise unlimited original jurisdiction of all justiciable matters, except as otherwise provided by the Constitution. Art. 7, § 7, Okl. Const. (eff. Jan. 13, 1969); State ex rel. Southwestern Bell Tel. Co. v. Brown, Okl., 519 P.2d 491, 495 (1974).
[8] See 10 O.S.Supp. 1965 §§ 471-475, which were repealed upon the enactment of 10 O.S.Supp. 1968 § 1130-1132. The terms of 10 O.S. 1941 §§ 101 et seq., pertaining to dependent and delinquent children, which provide, inter alia, that an association or individual who has guardianship of a child pursuant to these statutes may be made a party to an adoption proceeding and may assent to the child's adoption, did not empower the county court to terminate anyone's parental bond within the framework of a juvenile proceeding.
[9] Davis v. Davis, Okl., 708 P.2d 1102, 1111 (1985).
[10] The Latin phrase "coram non judice" means "[i]n the presence of a person not a judge. When a suit is brought and determined in a court which has no jurisdiction in the matter, then it is said to be coram non judice, and the judgment is void." BLACK'S LAW DICTIONARY, p. 337 (6th Ed. 1990).
[11] The legal effect and validity of a finally adjudicated case are measured by the four corners of its judgment roll. Mayhue v. Mayhue, Okl., 706 P.2d 890, 895 (1985); Timmons v. Royal Globe Ins. Co., Okl., 713 P.2d 589, 591-592 (1986); Reeves v. Agee, Okl., 769 P.2d 745, 752 n. 16 (1989); Willard v. Kelley, Okl., 803 P.2d 1124, 1134 n. 32 (1990).
[12] 12 O.S. 1991 § 1038; Hough v. Hough, Okl., 772 P.2d 920, 921 (1989); Mayhue, supra note 11 at 895; Scoufos v. Fuller, Okl., 280 P.2d 720, 723 (1955).
[13] Reeves, supra note 11 at 752, Mayhue, supra note 11 at 893 n. 8; Scoufos, supra note 12 at 723; State ex rel. Commissioners of Land Office v. Keller, Okl., 264 P.2d 742, 747-748 (1953).
[14] The vacation-of-judgments provisions in 12 O.S. 1941 §§ 1031 et seq. were invocable in county courts, which could set aside their orders and judgments. See in this connection Ozark v. Berryhill, 43 Okl. 523, 143 P. 173, 174 (1914); Co-Wok-Ochee v. Chapman, 76 Okl. 1, 183 P. 610, 612 (1919); W.T. Rawleigh Medical Co. v. Eggers, 74 Okl. 190, 178 P. 108, 109 (1919); Blancett v. Eslinger, Okl., 324 P.2d 273, 275-276 (1958); Tucker v. Leonard, 76 Okl. 16, 183 P. 907, 912 (1919); Cooper v. Newcomb, 73 Okl. 53, 174 P. 1029, 1031 (1918); Holmes v. Holmes, 27 Okl. 140, 111 P. 220, 221 (1910); Davis v. Sandlin, Okl., 392 P.2d 722, 724-725 (1964); see also In re Adoption of Davis, 206 Okl. 403, 244 P.2d 554, 555 (1952); In re Hughes, 88 Okl. 257, 213 P. 79, 80 (1923).
[15] The law observes the distinction between excess and absence of jurisdiction over a given subject matter. When the authority to deal with a subject does exist, the manner and extent of the power's exercise, even if patently excessive, will stand, absent a direct attack. Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351-352, 20 L.Ed. 646, 651 (1872); Stump v. Sparkman, 435 U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). In Stump, the judge ordered a juvenile girl to undergo sterilization. The question before the Court was whether the sterilization order was void because of absence of jurisdiction or merely voidable as one made in excess of its jurisdiction. The distinction between excess and absence of jurisdiction over a given subject matter is not significant in this case. While the county court doubtless had the authority to vacate its prior orders, its limited statutory cognizance did not then include the power to terminate parental rights in the framework of a juvenile delinquency case.
[16] The county court, a tribunal of limited jurisdiction, was without power to entertain parental termination proceedings of any kind.
[17] The county court was powerless to terminate parental rights when sitting as a juvenile court.
[18] Crump's Estate v. Freeman, Okl., 614 P.2d 1096, 1098 (1980).
[19] In re Bomgardner, Okl., 711 P.2d 92, 95-96 (1986); Seal v. Corporation Com'n, Okl., 725 P.2d 278, 294 (1986); Trinity Broadcasting Corp. v. Leeco Oil Co., Okl., 692 P.2d 1364, 1366 (1985); Wickham v. Gulf Oil Corporation, Okl., 623 P.2d 613, 615-616 (1981); Wilson v. State, ex rel. Oklahoma Tax Commission, Okl., 594 P.2d 1210, 1212 (1979); Mid-Continent Casualty Company v. P. & H. Supply, Inc., Okl., 490 P.2d 1358, 1361 (1971).
[20] Adoptions could be validly vacated in 1943. The then-effective vacation process availed in county courts. See supra note 14; In re Adoption of Davis, supra note 14; In re Hughes, supra note 14.